[No. 21612.   Department Two.   July 19, 1929.]

W. W. TURNER, *Respondent*, v. BENZ BROTHERS & COMPANY, *Appellant.*[1]

*D. H. Bonsted,* for appellant.

*M. C. Delle* and *O. Sandvig,* for respondent.

MILLARD, J.—On December 16, 1927, H. M. Asbury, a hay buyer, called at the farm of W. W. Turner, with whom he orally agreed to purchase all of the hay of the latter when baled and loaded on cars at Ashue railroad siding. To Asbury's inquiry at that time, "You want a check on this?" Turner replied, "No, it isn't neces-

[1]Reported in 279 Pac. 398.

sary. I will have it loaded, but anyhow I am safe because the hay is mine until it is paid for.'' It is clear Asbury understood that the hay would not be shipped until Turner had been paid for the same. Asbury testified: ''It was Mr. Turner's hay until I paid him for it.''

No one requested the railroad company to place cars at Ashue, at which point the company does not maintain an agent. Empty cars are switched onto the siding for the convenience of shippers, and it was the custom for the company to hold the cars until orders for release and instructions as to billing were given to the company's agent at Toppenish by the consignor or by the one who loaded the cars. Turner's employees hauled the hay to the siding and loaded it on two cars, the loading being concluded on Saturday, December 17. Turner went immediately to Asbury's office in Toppenish, a few miles distant, to obtain payment for the hay, but the buyer could not be found. On Monday, December 19, Asbury who had been authorized by no one so to do, gave written instructions to the railroad company to bill the two cars of hay on order of Benz Brothers, who in turn sold the hay to a customer in Seattle to whom it was shipped. Nothing was paid to Asbury by Benz Brothers for the hay. The price due was applied on Asbury's indebtedness to the defendant, for whom Asbury had previously purchased hay. Plaintiff, learning of the disposition of the hay and being unable to obtain payment therefor, commenced this action against the defendant to recover for its conversion. The cause was tried to the court. From the judgment entered upon findings and conclusion in favor of the plaintiff, the defendant appealed.

██ The contract herein was for a cash sale.

"The term 'cash sale,' as applied to the sale of specific goods, is sometimes used to denote a sale where title is not to pass until the cash price is paid, and sometimes to denote a sale where title has passed but possession is not to be delivered until payment is made. Tiffany, Sales, 123, 268. In either case payment and delivery are concurrent and mutually dependent acts, and if the seller gives up possession in expectation of immediate payment, and payment is not forthcoming, he may repossess himself of the goods or sue in conversion one who refuses his demand for repossession." *Welch Co. v. Lahart Elevator Co.*, 122 Minn. 432, 142 N. W. 828.

Under the contract, the title to the hay passed to the buyer as soon as the hay was baled.

"Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or time of delivery, or both, be postponed." Rem. 1927 Sup., § 5836-19.

It was an implied condition of the contract that possession would be surrendered and delivery made of the hay upon payment of the purchase price.

"Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price and the buyer must be ready and willing to pay the price in exchange for possession of goods." Rem. 1927 Sup., § 5836-42.

Turner, under this contract, could retain possession of the hay until payment had been made.

"The unpaid seller of goods who is in possession of them is entitled to retain possession of them until payment or tender of the price. . . . (a) Where the goods have been sold without any stipulation as to credit. . . ." Rem. 1927 Sup., § 5836-54, subd. 1.

Did Turner surrender possession of the hay to Asbury? The evidence is clear that the right of possession of the hay was never surrendered by Turner to Asbury, for the reason that there was no valid delivery thereof, and the respondent never waived the condition of the contract of sale that the goods should be paid for in cash. Credit was never extended by Turner to Asbury. The bargain between the parties is plain. Under it, Asbury was to pay Turner when the hay was loaded on the cars at the railroad siding. The price was due and payable the moment that the task of loading was completed. There was no delivery to Asbury.

"As already suggested, the wheat is not shown to have been *delivered* at all. It was placed in the car ready to be turned over to the control of Smith, or to be 'delivered' when payment was made. Delivery and payment were to be contemporaneous acts. Depositing the wheat in the car, under that contract, was simply putting the wheat in a position ready for delivery." *Toledo, Wabash & Western R. Co. v. Gilvin,* 81 Ill. 511.

It was impossible for Turner to keep one hand upon the hay until, with the other hand, he could grasp the money or check tendered in payment. There was no intention of surrendering possession to Asbury until payment had been made. It was intended to be a cash transaction. Asbury evaded Turner to avoid paying for the hay. Following the loading of the hay on Saturday, the 17th, Asbury on Monday, the 19th, without authority, instructed the railroad company to release the cars to the appellant. The respondent never parted with legal possession of the hay. He has not been guilty of aught that would estop him from asserting his right of possession. Asbury's unlawful exercise of dominion over the property was a conversion, and did not divest the respondent of his right to the hay. Legal possession of the hay was never surrendered

to Asbury, and appellant did not by its purchase acquire title superior to that held by Asbury.

The judgment should be, and it is, affirmed.

MITCHELL, C. J., FRENCH, PARKER, and MAIN, JJ., concur.