[No. 24540. Department Two. July 6, 1933.]

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, *Respondent*, v. LEWIS REALTY & INVESTMENT CORPORATION *et al.*, *Defendants*, PECK & HILLS FURNITURE COMPANY, *Appellant.*[1]

[1]Reported in 23 P. (2d) 572.

*McClure & McClure,* for appellant.

*Shank, Belt & Rode,* for respondent.

STEINERT, J.—This action presents a contest for priority to be given to one or the other of two chattel mortgages covering the furniture and furnishings of an apartment house. Upon a hearing before the court, both mortgages were declared valid, with priority given to plaintiff's mortgage over that of the defendant Peck & Hills Furniture Company. The correctness of the decision in the matter of priority is the only question before us. For brevity's sake, we will hereinafter refer to the respondent, John Hancock Mutual Life Insurance Company, as "respondent" or else as "the insurance company," to the appellant, Peck & Hills Furniture Company, as "appellant" or else as "the furniture company" and to the defendant Lewis Realty & Investment Corporation as "defendant" or else as "the realty company."

The facts of the case, as we gather them from the record, are these: In December, 1929, the realty com-

pany, being the owner of the Lola Apartments in Seattle, began negotiations, through its president and treasurer, Harry Lewis, with the furniture company for the purchase from the latter of the necessary furniture and furnishings with which to equip the apartment house. The negotiations culminated in the signing of a written instrument, which reads as follows:

"Dear Sir:                             Seattle, Washington.

"As a matter of record and for your acceptance in duplicate, we desire to confirm the verbal understanding had with reference to our supplying the furnishings of your new building at 519 W. Roy, containing 59 $\frac{\text{rooms}}{\text{apartments}}$

"It is estimated that your requirements in our line will amount to approximately $12,000 upon which you agree to pay, upon acceptance of this proposition, [here follows the phrase, 'a deposit of $............ also $............,' which phrase was eliminated by having lines drawn through it] 25% upon delivery and installation of the merchandise, and the balance to be settled in 12 payments of equal amounts commencing 30 days from the average date of delivery of the goods, together with interest on deferred payments at 7% per annum.

"It is understood, in consideration of the special terms granted, that the goods supplied are to be covered by our usual form of installment note, secured by chattel mortgage and insured at full value for the benefit of and in the name of seller but at the expense of the purchaser.

"We would thank you to signify your acceptance of the above by signing below.

"Subject to the approval of the Local Mgr. of the Company and contingencies of transportation, strikes or delays beyond our control.

"Yours very truly,

"PECK & HILLS FURNITURE Co.

"Accepted:                             For Banner Furn. Co.

"LEWIS REALTY CORP.

"By Harry Lewis, Pres."

This written instrument was a copy of a standard mimeographed form prepared and commonly used by the furniture company.

Deliveries, which were made in installments, began in January, 1930, and continued until May 8, 1930. During the period of deliveries, certain replacements became necessary and were made. On March 12, 1930, deliveries to the value of $11,093.46 had been completed. On that day, the defendant realty company executed and delivered to the insurance company its note in the sum of one hundred thousand dollars, payable in eight semi-annual installments of twenty-five hundred dollars each and a final installment thereafter of eighty thousand dollars. To secure this note, the realty company executed to the insurance company a real estate and chattel mortgage covering the apartment house building and the lot which it occupied, and also all personal property of every kind or nature then situate or thereafter to be placed in or upon the premises, including all furniture, furnishings, equipment and fixtures of every kind or nature, together with all replacements, replenishments and substitutions thereof. The apartment house was then eighty per cent occupied, which was a condition precedent to the making of the loan by the insurance company.

After the execution of this mortgage, recorded as a real estate mortgage and filed as a chattel mortgage, and between March 12, 1930, and May 8, 1930, additional and final deliveries of furniture and furnishings to the value of $1,303 were made by the furniture company to the realty company. On the last named date, the realty company paid the furniture company two thousand dollars cash and executed its note for the balance of the purchase price then owing, payable in five installments of varying amounts and at irregular periods. The note was secured by a chattel mortgage

on the entire lot of furniture and furnishings which had been delivered by the furniture company. This chattel mortgage was thereafter duly filed.

It will be noted that this arrangement and settlement was not strictly in accordance with the written instrument above quoted. There was some evidence offered at the trial by the furniture company and admitted by the court, and to which we shall later refer, to the effect that it was understood between the furniture company and Mr. Lewis of the realty company that title to the furniture and furnishings was to remain in the furniture company until the deliveries had all been completed and the chattel mortgage given to the latter company.

The question propounded for our solution and answer is whether the realty company owned, or had such an interest in, the furniture and furnishings which had been installed on or prior to March 12, 1930, or in the furniture and furnishings thereafter installed, that it could, on the date just mentioned, give the insurance company a valid chattel mortgage, superior to the mortgage to be given, and later given, to the furniture company on May 8, 1930. The key to the situation will be found if we can determine and fix the time when title to the property passed from the furniture company to the realty company. If title passed on or prior to March 12, 1930, or at any time prior to the execution of the chattel mortgage to the furniture company, then the insurance company's chattel mortgage would have preference. If no title passed until after, or except upon, the execution of the chattel mortgage to the furniture company, then the chattel mortgage of the latter would be prior in strength and validity.

There is nothing in the record, aside from the decree, which indicates how the court resolved the

question of fact that underlay the question of law relative to the passing of title. There are no findings, there is no memorandum of opinion, and there is no specific ruling which throws any light upon that phase of the matter. The decree merely orders that the respondent's mortgage on the real and personal property described therein be foreclosed, and that the property be sold and the proceeds be applied, first, in payment of the amounts due respondent, and the balance, if any, in payment of appellant's mortgage. But since the decree can be supported only on the theory that title to the personal property passed to the realty company at, or else prior to, the time of the respective deliveries of the furniture, we must assume that the court so decided and found.

There was some, though meagre, evidence, on the part of the furniture company, to the effect that it was understood between its credit manager and Mr. Lewis that title to the furniture was to remain with the furniture company until the deliveries had been fully completed and the chattel mortgage put into effect. On the other hand, the invoices which covered the various deliveries, and which were introduced in evidence, indicated on their faces that the property was "sold" to the realty company. The written instrument above referred to stated that the goods supplied were to be covered by the usual form of installment note secured by a chattel mortgage, but it is wholly silent as to any reservation of title pending the execution of a chattel mortgage. But, assuming that the contract was partly in writing, to the extent that it was embodied in the written instrument referred to, and partly oral, as is permissible under Rem. Rev. Stat., § 5836-3, the question then resolves itself into a determination of what the intention of the parties was.

The appellant contends that in determining the intention the following sections of the uniform sales act (Rem. Rev. Stat., § 5836-1 *et seq.*) apply and control:

"§ 5836-18. PROPERTY IN SPECIFIC GOODS PASSES WHEN PARTIES SO INTEND. (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

"§ 5836-19. RULES FOR ASCERTAINING INTENTION. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: . . .

"Rule 3. . . . (2) When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer: (a) When he signifies his approval or acceptance to the seller or does any other act adopting the transaction; . . ."

"§ 5836-20. RESERVATION OF RIGHT OF POSSESSION OF PROPERTY, WHEN GOODS ARE SHIPPED. (1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer."

Relying upon these sections, appellant, of course, contends that it was the intention of both the seller and the buyer of the property that title was to be reserved until the chattel mortgage to the furniture company was executed.

The respondent, on the other hand, contends that

the following rules under the above § 5836-19 apply and control:

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.
. . .

"Rule 3. (1) When goods are delivered to the buyer 'on sale or return' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery, but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time."

We take up, first, the sections on which appellant relies. Section 5836-18 does not apply to the situation, because that section has reference only to a contract to sell specific or ascertained goods. In the instant case, the goods were not specifically described or designated, and the written instrument was but an estimate of what the ultimate requirements of the realty company would be. It does not even appear from the evidence that the goods had been actually manufactured at the time that the agreement between the parties was made.

We do not think that rule 3 (2) of § 5836-19, *supra,* is applicable, because the evidence indicates that the deliveries were not merely "on approval or on trial, or on satisfaction, or other similar terms," but were for retention, subject only to replacements when necessary. But even if rule 3 (2) were applicable, there was sufficient evidence that the realty company signified its approval and acceptance of the goods, and by its acts adopted the transaction. It actually used the furniture in equipping the apart-

ments and renting them to the extent of eighty per cent of the capacity of the building.

■ Section 5836-20, *supra,* does not apply, first, because it was not a contract to sell specific goods, and second, because neither by the written instrument nor by oral agreement, established by the preponderance of the evidence, was there any reservation of title. The burden of proving such reservation rested upon the appellant, and it has not met that burden.

■ We now turn to the specific rules under § 5836-19 relied on by respondent. In our opinion, rule 1 of that section does not apply, because it was not, so far as the record discloses, a contract to sell specific goods in a deliverable state. We have already observed that the goods were unascertained. Nor, in our opinion, does rule 3 (1) of that section apply, because the evidence furnishes no warrant for holding that the appellant "had the option to return the goods instead of paying the price." The appropriation and use made by the realty company and permitted by the furniture company is at variance with any such idea.

■ We think that this case falls within, and is controlled by, rule 4 of the above § 5836-19. That rule, and its concomitant, rule 5, read as follows:

"Rule 4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

"(2) Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appro-

priated the goods to the contract, except in the cases provided for in the next rule and in section 5836-20. This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words 'collect on delivery' or their equivalents.

"Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or have reached the place agreed upon."

The contract here was for the sale of unascertained goods. While the description was somewhat general, it was at least sufficient to enable the parties mutually to act upon it by way of delivery and acceptance. As the goods arrived in a deliverable state and were required, they were actually delivered. Not only did the deliveries raise the presumption of unconditional appropriation under rule 4 (2), but the facts, to which we have already referred, lead to the same conclusion under rule 4 (1).

"It seems clear that where actual delivery of part of the goods is made to the buyer, assuming that the word 'delivery' implies some knowledge or assent on the part of himself or his agent to receive the goods, the natural inference is that the property passes. If for instance a man should ask a fruit dealer to pick out a dozen apples for him, and the fruit dealer handed the apples over to the buyer, one by one, as they were picked out, the presumption would be that the property in each apple separately passed at once. On the other hand, if the fruit dealer set them aside, one by one, as he picked them out, still retaining possession of them, no such inference would be proper." Williston on Sales, 2d Ed., § 277, p. 575.

Rule 5 is not inconsistent, but wholly in harmony, with rule 4, as applied to the facts in this case.

Appellant cites and relies upon the case of *Turner v. Benz Brothers & Co.*, 153 Wash. 123, 279 Pac. 398. In that case, there was a specific agreement between buyer and seller that title was reserved in the seller until the property was paid for. As we have already shown, that is not the situation here, and that case is, therefore, not applicable.

We have not lost sight of the fact that some of the deliveries of furniture were made subsequent to March 12, 1930, the date of respondent's mortgage. This would present the question whether that mortgage would also cover property afterwards acquired. That question, however, is not discussed in the briefs, and the parties apparently assume that it would. In 1 Jones on Chattel Mortgages and Conditional Sales (Bowers Ed.), §§ 173-173a, it is said that a chattel mortgage does cover after-acquired property where the intention to include it is clearly expressed. In *Bank of California v. Clear Lake Lumber Co.*, 146 Wash. 543, 264 Pac. 705, it was held that a mortgage covering generally a large mechanical establishment which was constantly undergoing repairs and replacements would include and cover after-acquired property that became an integral part of the plant. The opinion in that case stated that the question was a new one in this state, and in view of its limited holding, and in further view of the fact that the question is not squarely presented in the briefs here, we do not pass upon the point, but proceed upon the same assumption that was apparently followed by the parties to this action, namely, that a chattel mortgage may cover after-acquired property.

Having determined that title to the furniture was not reserved but became vested in the realty company at the time of the respective deliveries, the conclusion

follows that respondent's mortgage is superior to that of the appellant.

The judgment is affirmed.

BEALS, C. J., TOLMAN, MAIN, and BLAKE, JJ., concur.