[No. 24779. Department One. May 7, 1934.]

MACKALL-PAINE VENEER COMPANY, *Respondent,* v. VANCOUVER PLYWOOD COMPANY *et al., Appellants.*[1]

[1]Reported in 32 P. (2d) 530.

504

*John Wilkinson, Coan & Rosenburg,* and *Geo. J. Perkins,* for appellant.

*Ridgway, Johnson & Kendall,* for respondent.

MITCHELL, J.—In 1928, the Mackall-Paine Veneer Company, a foreign corporation, upon being duly authorized to do business in this state, operated a large business in Vancouver, Washington, in the manufacture of plywood, wood veneer, box shooks, baskets, boxes, etc. During that year, the Vancouver Plywood Company, a corporation, purchased the property, and on June 7, 1928, executed and delivered to Mackall-Paine Veneer Company two promissory notes aggregating the sum of $250,000, due on or before five years from that date, payable to the order of Mackall-Paine Veneer Company, and at the same time, to secure the payment of the notes, executed and de-

livered to Mackall-Paine Veneer Company a chattel mortgage, properly filed and recorded, containing certain provisions, as follows:

"That the said Mortgagor mortgages to the Mortgagee all that personal property situated and described as follows: [Here follows detailed and general description of machinery.]

"It being the intent of this chattel mortgage to cover all equipment, plant and machinery of every kind and character, owned by the mortgagor, and more fully described in Appraisal Book, dated Seattle, Washington, March 8, 1928, compiled by Valuation Engineers, Inc., and signed by John H. Adams, President which book is now on file in the office of the company and is particularly referred to as a description of the mortgaged property, mortgaged by this mortgage.

"All of the above described property being located on the property leased by B. F. Mackall and Herman Paine from the Port of Vancouver, Washington, said lease being dated the 18th day of July, 1923, all of said property being now located in the County of Clark and State of Washington. . . .

"It is expressly understood and agreed that the Mortgagor may sell machinery covered by this mortgage for the purpose of replacement to the value of One Thousand Dollars ($1,000) during any one year without the consent of the Mortgagee, provided that all the proceeds from the sale thereof must be immediately invested by the Mortgagor in new equipment or replacements.

"*It is expressly understood and agreed by and between the parties hereto that all additional machinery, of every kind and character, placed upon said property, or in said plant by the Mortgagor, during the life of this mortgage, shall become subject to the mortgage and fully covered thereby.* . . .

"The Mortgagor agrees to keep the plant and equipment covered by this mortgage in as good a state of repair and condition as the same now are, reasonable wear and tear thereof excepted."

Thereafter, the Vancouver Plywood Company operated the plant, and in the latter part of December, 1932, default having occurred in payments provided by the notes, this action was commenced on the notes and to foreclose the mortgage. At that time, there was a balance of about $195,000 due on the principal, and more than one year's interest. On the commencement of the action, December 27, 1932, the mortgagor, in open court, admitted insolvency, and thereupon and on written consent of the parties R. N. Wilkinson was appointed receiver of the property mortgaged, and at that time, or a few days thereafter, he was made general receiver with respect to all of the property of the Vancouver Plywood Company.

Thereafter, January 21, 1933, a general creditor of Vancouver Plywood Company filed a petition in the United States district court to have the Vancouver Plywood Company adjudged a bankrupt, and on January 30, 1933, it was adjudged to be a bankrupt. On February 2, 1933, R. N. Wilkinson was appointed by the United States district court receiver of the estate of Vancouver Plywood Company, a bankrupt, and shortly thereafter he was chosen trustee of the bankrupt estate.

On February 16, 1933, he, as receiver of the bankrupt estate, came into the case and filed a motion in the present foreclosure action to have the action dismissed for lack of jurisdiction in the superior court of the parties and of the subject matter of the action, and at the same time filed a duly verified answer to the complaint in the action. The order to dismiss was denied on February 23, 1933, the order reciting that the superior court had jurisdiction of the parties and of the subject matter of the action.

An order of default was duly entered against the

Vancouver Plywood Company for failure to answer after summons and complaint were served on it.

Thereafter, upon the trial on the merits, findings of fact were made and entered in favor of the plaintiff, upon which conclusions of law and decree of foreclosure and sale were entered. The trustee in bankruptcy has appealed.

 Upon the appeal, it is first contended that, because of the adjudication of bankruptcy in the United States district court, although it occurred after the commencement of the present foreclosure and appointment of receiver in the state court, the state court was deprived of power and jurisdiction to proceed further in foreclosure of the chattel mortgage. The first authority cited by appellant to sustain that contention is *U. S. Fidelity & Guaranty Co. v. Bray,* 225 U. S. 205, 32 S. Ct. 620. That case involved the right of creditors to maintain actions to establish claims against funds accumulated by a trustee in the administration of a bankrupt estate, in another court than those in which independent actions were brought, some three years after the commencement of the bankruptcy proceedings. It was held that suits in other courts could not be waged, and that jurisdiction in the bankruptcy court was exclusive.

The next case relied on by the appellant is *In re Hecox,* 164 Fed. 823. That case is cited as authority for the proposition that the bankruptcy court may take over from a receiver in a state court the bankrupt's property involved in mortgage foreclosure in the state court, commenced prior to proceedings in bankruptcy. The decision cites *In re Kaplan,* 144 Fed. 159, and *In re Knight,* 125 Fed. 35. Those cases do not justify appellant's contention, as appears from

the later case of *In re Rathman,* 183 Fed. 913, wherein the court said:

"Authorities are also cited to the effect that the bankruptcy court may by a like proceeding take away from a receiver of a state court, appointed to enforce a substantial claim of a mortgage or other lien upon the bankrupt's property, the actual possession thereof first acquired by him and may then proceed to adjudicase the claims to liens. *In re Kaplan* (D. C.), 16 Am. Bankr. Rep. 267, 144 Fed. 159; *In re Knight* (D. C.), 125 Fed. 35. But these decisions are overborne by the highest authority and by the reason of the case. *Louisville Trust Co. v. Comingor,* 184 U. S. 18, 24, 25, 22 Sup. Ct. 293, 46 L. Ed. 413; *Eyster v. Gaff,* 91 U. S. 521, 522, 525, 23 L. Ed. 403; *Metcalf v. Barker,* 187 U. S. 165, 172, 175, 176, 177, 23 Sup. Ct. 67, 47 L. Ed. 122; *Carling v. Seymour Lumber Co.,* 113 Fed. 483, 484, 485, 490, 51 C. C. A. 1."

Other authorities cited by appellant are, in our opinion, not in point. The correct and proper rule is set out in *Straton v. New,* 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060, which, after an exhaustive consideration of the subject of jurisdiction of different courts in bankruptcy proceedings, concludes with the following statement:

"Most of the cases cited by the appellees to the effect that the initiation of bankruptcy proceedings confers on the district court jurisdiction to enjoin pending suits in state courts deal with the situation where a lien was acquired within four months of the filing of the petition, or where, after the filing of the petition an action was begun to enforce a lien valid in bankruptcy. As heretofore noted, there are a few cases which have held that the bankruptcy court may enjoin proceedings, brought prior to the filing of the petition, to enforce valid liens which are more than four months old at the date of bankruptcy; but these cases are contrary to the decisions of this Court and to the great weight of federal authority."

The rule was followed in *Bryan v. Speakman* (C. C. A.), 53 Fed. (2d) 463, which was a case of the foreclosure of a mortgage three years old in a state court and the appointment of a receiver in connection therewith. The commencement of the suit and the appointment of a receiver having occurred within four months before the adjudication of mortgagor as a bankrupt, the circuit court of appeals, in discussing the subject of conflict of jurisdiction as between the state court and the Federal court, said (syllabus):

"Rule preventing unseemly conflicts between state and federal equity courts, whereby court first acquiring jurisdiction of res retains possession thereof, governs relations between state courts and bankruptcy courts."

To the same effect are our own cases, *State ex rel. Heckman v. Superior Court*, 28 Wash. 35, 68 Pac. 170, 92 Am. St. 826, and *Yeatman v. Patrician*, 144 Wash. 241, 257 Pac. 622.

The next question presents the claim of appellant that the superior court lost jurisdiction by an order made in this case which, it is claimed, directed the receiver to deliver the mortgaged property to the receiver in the bankruptcy proceedings. On its face, there is some confusion or uncertainty about the order, which, upon being called to the attention of the superior court for a construction, was held, by an order entered, not to deprive the court of jurisdiction of the parties or of the subject matter of the action. The parties to the foreclosure action, including the receiver in the bankruptcy proceedings, continued in the state court; and there is no finding, proposed finding or report that there was any actual change in the possession of the mortgaged property. In addition, the appellant filed an answer to the merits in the fore-

closure proceedings, and continued in the action as a party through the trial of the case on its merits.

By other assignments, it is claimed that the court erred in finding that certain after-acquired personal property, consisting of machinery placed in the plant, became subject to the mortgage as integral parts of the plant. Upon what appears to be a preponderance of the evidence, the trial court found:

"That the defendant Vancouver Plywood Co. is, and its vendor Mackall-Paine Veneer Company was a large industrial plant, engaged in the making of veneer and the fabricating and shaping of veneer products; that in the operation of said plant, and in order to supply to its trade veneer products in commercial quantities, the said plant of the defendant was constantly undergoing replacements, repairs, improvements, additions and extensions, and by reason thereof, and between dates of June 7, 1928, and December 27, 1932, the date on which the foreclosure proceeding was instituted, said Vancouver Plywood Co. acquired considerable personal property, all of which was installed in said plant, and was in the nature of replacements, repairs, improvements, additions or extensions; that such after-acquired property did not in any sense either become or remain new, different or additional property, but became an integral part of the original plant of the Vancouver Plywood Co., the type and character of the business conducted by the Vancouver Plywood Co., being at all times of the same type and character as that taken over by the Vancouver Plywood Co. from its predecessor vendor, plaintiff Mackall-Paine Veneer Company."

The case in this respect is controlled by the case of *Bank of California v. Clear Lake Lumber Co.,* 146 Wash. 543, 264 Pac. 705, in which there was a controversy over the lien of a chattel mortgage, similar to the one in the present case, as to subsequently acquired personal property installed by way of improvement

and repairs to a large industrial plant, wherein the court said:

"It should be remembered that this mortgage covered a vast industrial plant, a going concern, engaged in large operations. . . . The class and character of the property mortgaged were such that it was constantly undergoing replacements, repairs, improvements, additions and extensions. This mortgage covered generally a vast mechanical establishment. The after-acquired property did not, in any sense, either become or remain new, different or additional property, but rather became an integral part of the original plant. Establishments such as this are continually requiring repairs and replacements, and to hold that the materials used in maintaining the plant as a going, efficient concern are free from the mortgage would soon cause the loss of the security of the mortgage.

"Among other cases which we have examined, the following may be cited: *Harris v. Youngstown Bridge Co.,* 90 Fed. 322; *Wade v. Chicago, etc. R. Co.,* 149 U. S. 327; *Brady v. Johnson,* 75 Md. 445; *Minnesota Loan & Trust Co. v. Peteler Car Co.,* 132 Minn. 277, 156 N. W. 255; *Central Trust Co. v. Kneeland,* 138 U. S. 414; 34 L. Ed. 1014; Fletcher on Corporations, Vol. 3, § 1279; *Hickson Lumber Co. v. Gay Lumber Co.,* 150 N. C. 282, 63 S. E. 1045, 21 L. R. A. (N. S.) 843.

"We hold, therefore, that this after-acquired property, being in the nature of repairs and replacements for an industrial plant, is covered by the lien of the mortgage."

In *Community State Bank v. Martin,* 144 Wash. 483, 258 Pac. 498, we quoted with approval from *Ludlum v. Rothschild,* 41 Minn. 218, 43 N. W. 137, as follows:

"We are of the opinion that, except in cases prohibited by statute, (see Gen. Laws 1887, c. 176), whenever the parties by their contract in clear terms express an intention to create a positive lien upon personal property not then owned, but to be subsequently acquired, by the mortgagor, whether then *in esse* or

not, the mortgage attaches as a lien on the property as soon as the mortgagor acquires it, as against the mortgagor and all claiming under him, either by voluntary transfer or with notice, precisely as if the property had been in being and belonged to the mortgagor when the mortgage was executed.''

The next question, as stated by appellant, refers to the ''allowance of attorney's fees as a lien against the mortgaged property.'' The attorney's fee was allowed as a part of the judgment for which, altogether, the property is ordered to be sold. The notes and mortgage all provide for reasonable attorney's fees in case of suit, and the record shows that at the trial, in open court, the parties, through their respective counsel, stipulated that the court ''may determine the reasonable attorney's fee to be allowed the plaintiff.'' Appellant does not claim that the amount allowed is unreasonable.

Next, it is claimed that the mortgagee had no capacity to sue, not having alleged and proved that it had paid its annual license fee, as required by Rem. Rev.. Stat., § 3842. However, at the time this action was commenced, the plaintiff mortgagee was not engaged in business in this state and had not been for several years. It was a foreign corporation, and was not required to comply with this section of the statute in order to maintain a foreclosure action. *Bank of Gresham v. Johnson,* 143 Wash. 24, 254 Pac. 464, and cases therein cited.

It is claimed that the court erred in not allowing certain statutory liens against the property, including laborers' liens and also certain costs. Certain findings in this respect were proposed to the trial court, but not signed. We are of the opinion that the statutory liens should have been disposed of in this

case, provided they had not already been taken care of in some other proper proceedings.

Respondent says, in its brief, that the question of the liens had been presented to the referee in bankruptcy by an agreement of the parties, and the payment of the same, if ordered by the referee, is secured and provided for by deposits made and to be made in the bankruptcy court. But the record in this case shows no such agreement or understanding. We cannot take notice of a record of some other court not properly brought into the record in this case.

Other assignments are either not argued in appellant's brief or are disposed of by what has been said already.

The judgment is affirmed except as to the laborers' and other statutory liens, if any, with respect to which, upon remand, the trial court is directed to modify the judgment by providing for such liens, unless, at a hearing for that purpose, it appears that such liens have been already otherwise taken care of.

BEALS, C. J., MAIN, STEINERT, and MILLARD, JJ., concur.