**Robert A. WATSON, Appellant,**

v.

**Wesley K. DUCE, Trustee in Bankruptcy for Myrtle M. Dawson, Bankrupt, Appellee.**

**No. 21010.**

United States Court of Appeals Ninth Circuit.

July 7, 1967.

Paul D. Hansen, James Hunter, Anderson & Hunter, Everett, Wash., for appellant.

Joseph Meagher, Everett, Wash., for appellee.

Before MADDEN, Judge, Court of Claims, and MERRILL and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Appellant seeks reversal of a decision of the district court which adopted the findings of fact and conclusions of law

of a referee in bankruptcy and affirmed the referee's order.

The order denied appellant's secured status as the holder of a chattel mortgage on a shifting stock of goods. There is no disagreement on the facts.

Before 1957, appellant owned a small business in Everett, Washington, known as The Book and Record Shop. In Febuary, 1957, appellant sold the business to Kenneth and Myrtle Dawson, who at the time were husband and wife and composed a marital community under Washington law. The Dawsons paid cash for part of the purchase price and gave appellant a promissory note for the balance. To secure the note Kenneth Dawson executed in appellant's favor a shifting stock chattel mortgage on the fixtures and inventory of the business. The terms of the mortgage allowed the stock and fixtures of the business to be sold or replaced by the mortgagor as long as the aggregate value always amounted roughly to the original amount of the security. In addition to the stipulated monthly payments to be made on the note, the mortgage provided for appropriate quarterly financial reports to be submitted to the mortgagee, appellant, so that he would be continuously informed of the status of his floating lien. The mortgage was executed in the name of Kenneth Dawson, but the parties agreed, and the referee found, that the mortgage was executed on behalf of the marital community. The parties to the action have stipulated that the mortgage was properly drawn, executed, and recorded under Washington law.

Myrtle Dawson managed the business for the community. She made the mortgage payments and submitted the financial reports to appellant. In 1960 she sued Kenneth Dawson for divorce, and in June, 1960, the marital community was dissolved by the Snohomish County, Washington, Superior Court. A property settlement was agreed upon by the parties, and the Superior Court incorporated this settlement in its decree. As adopted by the court the property settlement stated in relevant part:

"It is further ordered, adjudged and decreed that the plaintiff be and she is hereby awarded as her sole and separate property * * * all of that certain business known as the 'Book and Record Shop' located at 2625 Colby Avenue, Everett, Washington, together with its appurtenances, including business fixtures, stock of goods, accounts receivable, and good will, subject to indebtedness against the same, including the balance due on the purchase price, which the said plaintiff be and she is hereby obligated to pay and hold the said defendant harmless from obligations thereon. * * * "

Both the property settlement and the decree of divorce adopting the property settlement were filed in the divorce action with the Snohomish County Clerk.

After the divorce Myrtle Dawson continued to operate the business, make the mortgage payments, and submit the periodic reports required by the mortgage. Two changes did take place in her treatment of the mortgage debt after the divorce. First, instead of making payments larger than required by the mortgage as she had done before, beginning in February, 1962, she trimmed the payments to the minimum monthly requirement of $175. Second, she began to submit the financial reports on an annual basis rather than on the quarterly basis required by the mortgage. However, by the time these changes were made in the prior procedures the original obligation of almost $16,000 had been substantially reduced.

In the Fall of 1964 Myrtle Dawson filed a voluntary petition in bankruptcy. At this time the debt had been reduced to about $3,000. The parties have agreed that at the time of the bankruptcy, the bulk, if not all, of the inventory on hand had been acquired by Myrtle Dawson after entry of the divorce decree in June, 1960, but that the fixtures were the original ones.

The court concluded, on the authority of United States Rubber Co. v. Young, 1961, 57 Wash.2d 686, 359 P.2d 315, that the original mortgage was valid under Washington law and that the failure of Myrtle Dawson to meet the accounting requirements did not render the mortgage invalid. Next, the court held that even though the mortgage agreement was signed only by the husband, it bound the community property acquired at the time of the purchase and all community property that "flowed into the ambit of the mortgage during the life of the community." There is no dispute about this conclusion. The only point appealed is the court's final determination that, while property on hand at the time of the divorce was subject to the lien of the mortgage, property acquired by Myrtle Dawson subsequent to the divorce was free of that lien. The referee's reasoning, adopted by the court, was that the mortgage was a community obligation, but that since the community came to an end on June 4, 1960, with the divorce, and all property acquired after that date was acquired by Myrtle Dawson in her individual capacity, such property cannot be burdened by the lien of the community mortgage. We think that the rules of Washington community property law require reversal.

The lien of a shifting stock chattel mortgage binds after-acquired property because of the original promise by the mortgagor. As soon as the mortgagor acquires title to replacement property, the lien attaches. In effect, the law executes the promise. See Armstrong v. Ford, 1894, 10 Wash. 64, 71, 38 P. 866, 869; Jones, Chattel Mortgages and Conditional Sales §§ 173, 408a (Bowers Ed. 1933). In the present case the promise was made by the husband on behalf of the community. Myrtle Dawson was bound by that promise because under Washington law her husband, as the manager of the community property, could bind the community property without her consent. Proff v. Maley, 1942, 14 Wash.2d 287, 128 P.2d 330. Furthermore, in Washington, divorce does not terminate such community property obligations. The burdens continue on the property of the community and can be asserted against the portion of it awarded to the wife in divorce as her separate property—and this result follows even though the wife may have had no knowledge of the obligation. See Capital Nat'l Bank v. Johns, 1932, 170 Wash. 250, 16 P.2d 452; Dizard & Getty v. Damson et ux, 1964, 63 Wash.2d 526, 530, 387 P.2d 964; Britt v. Damson, 9 Cir., 1964, 334 F.2d 896. These cases are not precisely in point; they all deal with property that had been owned by the community and transferred to the wife in the divorce proceedings. Here we deal with property acquired by the wife after the divorce, and not from the community. But we also deal with a promise, made originally on her behalf by her husband. We see no reason why the divorce should terminate the effect of the original promise here where the wife clearly had notice of the obligation of the mortgage, and in fact took subject to it by the terms of the divorce settlement. In substance, she agreed that the mortgage should continue in effect, thus renewing or continuing the promise that had been previously made on her behalf by her husband.

The court and the referee were concerned with the adequacy of notice to creditors dealing with Myrtle Dawson after the divorce. We think that it is a sufficient answer to this concern to note that before the divorce the only notice creditors had of the mortgage was through its having been filed under the name of Kenneth Dawson in the office of the county auditor. See RCW 61.04.020. Yet under Washington law this was valid notice to creditors dealing with Myrtle Dawson. The divorce did not diminish the notice; and after the divorce Myrtle Dawson continued to operate the shop as before.

As between the general creditors and appellant, the equities revealed by the record are in favor of appellant. The creditors were in as good a position after the divorce as they were before. But the mortgagee had no notice of the di-

vorce and no indication after the divorce that Myrtle Dawson had changed status from manager for the community to manager of her separate property. It would be unfair in these circumstances to deny the mortgagee's secured status because he did not require Myrtle Dawson to execute a new mortgage in her individual capacity.

The Washington law is unclear on the question of whether the lien of a shifting stock chattel mortgage would cover replacement property acquired by one who purchased the original stock of goods from the mortgagor with notice of the mortgage.[1] We express no opinion on that question; we limit our holding to the facts of this case.

Reversed and remanded for proceedings not inconsistent with this opinion.

---

1. The Washington court has held that when assets of a large business are subject to a floating stock mortgage, the lien of the mortgage continues when the business is transferred, not only as to property on hand at the time of the transfer, but also as to replacement stock acquired by the transferee of the business. Whether the same rule applies under other circumstances or to other types of businesses is not clear. Reconstruction Finance Corporation v. Hambright, 1943, 16 Wash.2d 81, 133 P.2d 278; Mackall-Paine Veneer Co. v. Vancouver Plywood Co., 1934, 177 Wash. 503, 32 P.2d 530; Straus v. Wilsonian Investment Co., 1934, 177 Wash. 167, 31 P.2d 516; Hancock Mutual Life Ins. Co. v. Lewis Realty & Investment Corp., 1933, 173 Wash. 444, 23 P.2d 572; Bank of California v. Clear Lake Lumber Co., 1928, 146 Wash. 543, 264 P. 705. But see Moore v. Terry, 1897, 17 Wash. 185, 49 P. 234.