[No. 24787. Department Two. April 5, 1934.]

SAMUEL J. T. STRAUS, *as Trustee, Respondent,* v. WILSONIAN INVESTMENT COMPANY *et al.,* *Appellants.*[1]

[1]Reported in 31 P. (2d) 516.

168

*Bogle, Bogle & Gates* and *Warren Brown, Jr.,* for appellants.

*Peters, Evans & McLaren,* for respondent.

HOLCOMB, J.—This action was instituted by respondent to foreclose a trust deed and chattel mortgage and two supplemental chattel mortgages upon what is commonly known as the Wilsonian Apartment Hotel property in Seattle. Appellant Wilsonian Investment Company, a corporation, was named a party defendant because it was the record owner of the mortgaged property, and is now appealing from an order denying it any right to the proceeds of certain accounts collected by the receiver appointed in the foreclosure proceedings. Appellant Security Mortgage Company, a corporation, intervened, claiming the title to certain furniture and other personal property in the hotel building, and appeals from the final judgment denying it any right to the property so claimed. These two appeals having been by stipulation considered together, both are to be determined herein.

In 1922, George W. Wilson and wife, who will be referred to herein as mortgagors, being indebted in the principal sum of four hundred and thirty thousand dollars, evidenced such indebtedness by the issuance of first mortgage bonds, and gave as security for the payment thereof a trust deed and chattel mortgage upon the apartment hotel property, and more particularly upon the buildings, fixtures, improvements, furniture, supplies and equipment, and on all new construction, replacements and additions, real and personal. This instrument, after requiring the complete

equipment and maintenance of the establishment as an apartment hotel and garage, provided that the premises, furniture and furnishings should be timely repaired and replaced, to the end that the premises should always be well maintained for the purposes for which they were intended. It further provided that the

" . . . lien of this indenture . . . upon the furniture and fixtures herein provided to be installed by the mortgagors and any and all additional furniture and furnishings which may be installed in said building by said mortgagors, or either of them or their assigns, or the assigns of either of them, shall at all times during the lifetime of this indebtedness be superior and paramount to any lien, right, title or claim of anyone having any interest in said furniture and furnishings."

And further, that

"The covenants, agreements, conditions, promises and undertakings in this indenture, shall extend to and be binding upon the heirs, executors, administrators and assigns of the mortgagors and each of them, the same as if they were in every case named and expressed, and all covenants hereof shall bind them and each of them jointly and severally."

There is still a further provision in the instrument that " . . . . the covenants herein contained shall be considered as covenants running with the land."

In 1923, the Wilsonian Investment Company was incorporated, the mortgagors conveying to it the mortgaged premises subject to the trust deed and mortgages, taking in exchange therefor practically all of the capital stock of the company. Thereafter, this corporation operated the apartment hotel, with the mortgagors as the principal stockholders, until November, 1925, at which time the mortgagors sold their capital stock, thereby divesting themselves of all interest in the mortgaged property.

In March, 1929, the capital stock of the Wilsonian Investment Company was practically all acquired by Chas. F. Clise and H. W. Beecher, the division being two-thirds and one-third, respectively. Clise thereupon became president and Beecher, secretary, of this corporation, and both were members of the board of trustees, which offices they retained to the time of this litigation. From the last mentioned date, personalty needed in the operation of the apartment hotel was added to the premises in three different ways: First, by purchases made by the Wilsonian Investment Company; second, by Helen Swope, a tenant, who, in October, 1931, sold her property to Clise; and third, by purchases made by Clise and Beecher. Bills of sale covering these three groups of property were made to the intervener, the Security Mortgage Company. Clise was also president of this intervener, owning approximately two-thirds of the capital stock. Both Clise and Beecher participated in the conveyancing of the personal property to the intervener.

The trial court held that the personalty so attempted to be conveyed to the intervener was a part of the liened property, although purchased and placed in the apartment hotel after the trust deed and chattel mortgages were executed and by others than the original mortgagors.

■ We shall first consider the appeal of the Security Mortgage Company from this ruling. The sole question presented by this appeal may be thus stated: Does the lien created by the trust deed and chattel mortgages attach to personal property placed upon the premises after the mortgagors had parted with their title to the originally mortgaged property, when the subsequently acquired property was used and needed in the operation of the apartment hotel, and was in part purchased by the assignee of the mortgagors and

individually by the president and secretary of such assignee?

It requires no citation of authorities to support the statement that, at common law, a mortgage can operate only on property in existence at the time the mortgage is given, and then only if such property actually belongs to the mortgagor, or potentially belongs to him as an incident of, or accession to, other property then in existence and belonging to him. But it is equally well settled that, although a mortgage on after-acquired property is void in law because it has nothing to operate upon, still equity treats such conveyance as in the nature of an executory contract, to take effect and attach to the subject-matter as soon as it comes into existence, and the agreement ripens into an actual transfer, for equity considers as done that which the mortgagor has positively agreed to do.

Appellant contends, however, that an agreement to mortgage after-acquired property is but a personal obligation of the mortgagors, and therefore does not bind subsequent owners of the original mortgaged property, at least in so far as it concerns property acquired after the transfer of title by the mortgagors.

The rule upon this point is thus stated in *Trust Company of America v. Rhinelander,* 182 Fed. 64:

"As the mortgagor could not expressly contract to mortgage the after-acquired property of others, such property can never come within the mortgage by the force of such a contract alone, unaided by the rule of accession, estoppel, or some other equitable consideration."

We have in this case something more than a declaration that the after-acquired property shall be subject to the mortgage. There is, in addition, a very definite agreement that the premises will be furnished, and from time to time the furnishings and equipment will

be repaired and replaced, to the end that the premises will be maintained at all times during the period of the indebtedness as a properly equipped apartment hotel. The very recitals of the extent and nature of the security require a proper furnishing and maintenance of the property. These obligations cannot be said to be solely *in rem,* or personal to the mortgagors, but are more in the nature of warranties respecting the use and occupancy of the premises. To state it differently, the security for the debt is the entire establishment maintained as required by the mortgage. The lien is upon the entire hotel property, for it specifically covers all appurtenances and additions.

A hotel is a business institution, and includes not merely the structure, but, necessarily, the entire equipment going into the building to make it a hotel. *Commercial Casualty Insurance Company of Newark v. Adkisson,* 152 Okla. 216, 4 P. (2d) 50. Personal property of this nature so added to the establishment becomes an accession, or an integral part of the hotel property, which, under the clear terms of the mortgage, is what was intended to be the security for the payment of the indebtedness. There was certainly a privity of title between the mortgagors and their grantee, and there can be no question about notice of the existence and terms of the mortgage.

In addition to all this, the after-acquired property was purchased for use in the hotel by the grantee and by Clise and Beecher individually, who were at the time the president and secretary, respectively, of the grantee.

This case is governed, in principle, by *Bank of California v. Clear Lake Lumber Co.,* 146 Wash. 543, 264 Pac. 705, in so far as it relates to accessions. In an *En Banc* decision, we said:

"It should be remembered that this mortgage covered a vast industrial plant, a going concern, engaged in large operations. . . . The class and character of the property mortgaged were such that it was constantly undergoing replacements, repairs, improvements, additions and extensions. This mortgage covered generally a vast mechanical establishment. The after-acquired property did not, in any sense, either become or remain new, different or additional property, but rather became an integral part of the original plant. Establishments such as this are continually requiring repairs and replacements, and to hold that the materials used in maintaining the plant as a going, efficient concern are free from the mortgage would soon cause the loss of the security of the mortgage. . . .

"We hold, therefore, that this after-acquired property, being in the nature of repairs and replacements for an industrial plant, is covered by the lien of the mortgage."

To the same effect is *Hancock Mutual Life Insurance Co. v. Lewis Realty & Investment Corporation,* 173 Wash. 444, 23 P. (2d) 572.

Appellant relies upon and quotes largely from an article in 13 Minnesota Law Review entitled "After Acquired Property Under Conflicting Corporate Mortgage Indentures." The part quoted, however, is taken from that portion of the article relating to the right to impress a mortgage lien with an after-acquired property clause upon the property of the purchaser of the mortgaged property, when such purchaser's property is unrelated to the mortgaged property and not in any sense contemplated by the parties to the mortgage.

Appellant also relies upon the case of *Guaranty Trust Co. v. New York & Queens County Ry.,* 253 N. Y. 190, 170 N. E. 887, where the mortgage, by its terms, bound only the mortgaged corporation "and its succes-

sors," and did not include purchasers, or assigns, the court saying:

"A covenant by a corporation for itself and 'its successors' is like a covenant by a natural person for himself, 'his executors and administrators.'"

Also, that

"The problem to be solved is the effect to be given to a covenant so phrased in its application to a railroad succeeding through merger to the franchise of another. . . . a covenant by a corporation extending the lien of a mortgage to property thereafter acquired by its 'successors' is not an attempt to impose the continuing burden of the covenant in respect of future acquisitions upon a new corporation that is merely a purchaser."

While it is true there is some dictum in that opinion which seems to support appellant, the court was not considering accessions, or principles of equity which we deem applicable to the case at bar.

We very carefully examined all authorities cited, and are satisfied that none of them are inconsistent with the theory which we apply to the case at bar, and therefore it would be needless for us to review each case cited. We conclude that the equities are with respondent, and that the mortgage covers the property involved in this appeal.

The appeal of the Wilsonian Investment Company is premised upon the following: On May 12, 1932, an order of the trial court was made appointing a receiver for the mortgaged property to take possession, operate, and to collect the rents, issues and profits therefrom, and apply the same to the payment of expenses of operation and taxes. An appeal was taken from this order and a supersedeas bond furnished, the effect of which was to permit appellant to retain possession of the mortgaged property during the appeal period. The order appealed from was affirmed by this

court (*Straus v. Wilsonian Investment Co.*, 171 Wash. 359, 17 P. (2d) 883), the remittitur being filed in the office of the clerk of the superior court on March 15, 1933. The receiver so appointed thereupon took possession of the hotel property, and collected certain accounts for rentals earned in the operation of the hotel during the period covering the appeal. Appellant petitioned the trial court for an order requiring the receiver to pay to appellant the amount of such collections, and it is from the order denying this petition that this appeal is taken.

It is urged by appellant that the effect of the ruling is to cause the Wilsonian Investment Company to pay the bills incurred in the operations pending the appeal, and to deprive it of the earnings during that period; that the receivership is a special one covering the property and not the operating corporation; that the accounts receivable were earned by the corporation, and therefore belong to it; that the effect of the denial of appellant's right to the accounts receivable is to make the order of appointment of the receiver retroactive, which, in effect, treats the property as *in custodia legis* during the appeal, although the supersedeas bond was given which, admittedly, gives appellant possession of the property; that, in any event, the supersedeas bond is protection for a proper accounting covering the appeal period, and insures that the rents and profits, "less the reasonable operation expense," shall be applied to the payment of taxes.

Notwithstanding these several contentions, we are satisfied that only one question is presented, namely: Is the receiver entitled to the rents and profits, totalling $1,253.51, created during the pendency of the appeal from the order appointing such receiver, to be applied toward the payment of taxes which are far in excess of this amount?

It can hardly be argued that the receiver would not have been entitled to the rentals had there not been a supersedeas bond filed, because the receiver was appointed for that very purpose, and the order of appointment was affirmed by this court. The effect of this bond was not to take from the receiver these assets. It simply gave to appellant the right to possession. It did not nullify the appointment of the receiver, but merely preserved the *status quo,* and did not reverse or undo what had been done. *Lowe v. Clark & Co.,* 150 Wash. 267, 272 Pac. 955.

The question of the effect of a supersedeas bond in a case involving a receivership was considered by a circuit court of appeals in *State v. Palmer,* 158 Fed. 705, 22 L. R. A. (N. S.) 316 (not cited). The opinion, in part, reads:

"We now come to the consideration of the second question, relating to the effect of the supersedeas. . . . It is a mistake to assume that the supersedeas proceedings discharged the receiver. His activities are suspended, but he is not discharged. The order appointing him is not vacated, for, on affirmance of the order, he does not have to be reappointed. He has been, pending the appeal, and he remains, a qualified and bonded officer of the state court. The suspension of the order by the appeal and supersedeas permits the defendant to resume or continue in the possession of the property covered by the order, but his possession is subject to the orders and jurisdiction of the state court. One of the conditions of the bond given is that the principal obligor shall perform the 'judgment, sentence or decree' of the appellate court. There is nothing in the statute nor in the Texas cases construing it to indicate that the supersedeas bond is a substitute for the property embraced in the order appointing the receiver."

The United States supreme court, in considering this last mentioned case on appeal (*Palmer v. Texas,* 212 U. S. 118, 29 S. Ct. 230), said:

"The Supreme Court of Texas has therefore decided in this case as we think it had held in its former decisions, cited in the opinion of Judge Shelby, speaking for the Court of Appeals in this case, that the effect of the appeal and bond was merely to suspend the order appointing the receiver pending the determination of the appeal."

As soon as the affirmance of the order was made effective, it became the duty of the receiver to carry out the directions of the court contained in the order appointing him, and that was, in part, to collect rents and apply the proceeds as therein directed. That this order is now binding upon appellant Wilsonian Investment Company, is beyond question, because the appeal from it settled all points which might have been raised and adjudicated. *Munro v. Irwin,* 163 Wash. 452, 1 P. (2d) 329.

The order and the judgment appealed from are affirmed on both appeals.

BEALS, C. J., BLAKE, GERAGHTY, and TOLMAN, JJ., concur.