INVESTMENT & SECURITIES CO. v. ROBBINS et al.

No. 235.

District Court, E. D. Washington, N. D.

March 31, 1943.

Witherspoon, Witherspoon & Kelley, of Spokane, Wash., for intervening plaintiff.

Thomas A. E. Lally, of Spokane, Wash., for cross-defendant Robbins.

Edward M. Connelly, U. S. Atty., and Harvey Erickson, Asst. U. S. Atty., both of Spokane, Wash., for defendant Kuhl and the United States, additional intervenor.

SCHWELLENBACH, District Judge.

This case involves that portion of the controversy concerning the tax problems of Judson G. Rosebush of which disposition was not made in the case of United States v. Rosebush, D.C., 45 F.Supp. 664. In that opinion will be found a statement concerning the tax and assessment involved here. The assessment appeared on the Commissioner's list which was received by the Collector of Internal Revenue at Milwaukee, Wisconsin, on February 18, 1934. Demand for payment was made on February 27, 1934.

This action was commenced by Charles P. Robbins, Shareholders Agent for the shareholders of the Exchange National Bank of Spokane, Washington. It is in the nature of an interpleader. Robbins has deposited in this Court sixty-five hundred dollars ($6,500), being the amount of Rosebush's share of the dividends on account of assessments paid by him on his shares in the Exchange National Bank, a national banking association which, in 1928, became insolvent and which assessments were paid by him in 1929. The record discloses that Robbins was appointed as Shareholders Agent in 1936 after all creditors of the insolvent bank had been paid in full and that since that date Robbins has liquidated all of the assets then turned over to him by the Receiver of the insolvent bank. Rosebush and his wife, Barbara McNaughton Rosebush, were joined as parties in this action and were both served with process. Neither of them appeared and defaults have been entered against them.

The Investment and Securities Company, a Washington corporation, intervened in the action and asserted its claim to the fund on the basis of an assignment to it on July 27, 1937, by which Rosebush pledged any recovery to which he might be entitled as security for the balance of the indebted-

ness due by Rosebush to Investment and Security Company (hereafter called the Intervenor.) The correspondence leading up to the assignment and the assignment itself clearly show that it was made with knowledge of the asserted lien by the United States for taxes. The assignment itself specifically stated that it was subsequent and junior to such lien if one existed. It is conceded that the Intervenor filed notice of the assignment with Robbins on March 14, 1938.

The United States and Frank J. Kuhl, Collector of Internal Revenue for Wisconsin, have both appeared and they both assert the right of the Government to this money on the basis of the claim of tax lien and also on the basis of a writ of fieri facias issued out of the United States District Court for the Eastern District of Wisconsin November 27, 1941, by virtue of a judgment in favor of the United States against Rosebush in the amount of $37,220.-85, for the taxes noted in the Commissioner's assessment list in 1934.

 Since whatever right the Intervenor acquired under the assignment of July 27, 1937, was junior and inferior to a tax lien of the Government, the primary question in this case is whether, on that date, the Government had a lien against the right which Rosebush assigned to the Intervenor. Intervenor alleges in its complaint and contends in its brief that, if the Government had a lien, such lien was ineffective as to it because of the failure to file notice of the lien in the State of Washington. The Intervenor contends that the situs of the property was here and that it, as pledgee, acquired a right superior to that of the Government. The error in this reasoning by the Intervenor arises from the fact that, in 1937, 26 U.S.C.A., § 1562 (now Title 26 U.S.C.A. Int.Rev.Code Sec. 3672) applied only as to a mortgagee, purchaser or judgment creditor. The word "pledgee" was not inserted until the act was amended on June 29, 1939, 53 Stat. 882, which amended the Internal Revenue Code of 1939, 53 Stat. 449. At no place does the 1936 Revenue Act, 26 U.S.C.A. Int.Rev. Acts, page 813 et seq. refer to this question. (See Report, Ways and Means Committee, House of Representatives, 76th Cong. 1st Session, #855, p. 25 and 26; Report, Finance Committee, U. S. Senate, 76th Cong. 1st Session, #648, p. 10; Congressional Record, Vol. 84, pt. 7, p. 7482, 7500. The retroactive features of the 1939 amendment applied only to subsection (b) which involved purchasers of securities "without notice or knowledge of the existence of such lien."

 This being true, we are confronted with the situation which was described by Paul and Mertens in their "Law of Federal Income Taxation" sec. 47.38 as follows: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount 'shall be a lien' which shall arise at the time the assessment list was received by the Collector unless 'another date is specifically fixed by law.' This provision does not touch the validity or effect of the lien as between the Government and mortgagees, purchasers and judgment creditors,—as between them, the statute is specific. Since the specific clause providing for the invalidity of liens must mean that, as between the Government and any other creditor or lien claimants, the Government's lien must prevail from the time of demand without further filing." The evidence here is undisputed that the assessment list was filed with the Collector and demand made in 1934. Consequently, if the claim which Rosebush pledged to the Intervenor on July 27, 1937, was property or a right to property, real or personal, at the time of the filing of the assessment list and demand, then the assignment to the Intervenor was subordinate and inferior to it because the statute, 26 U.S.C.A. Int.Rev.Code § 3670, provided if any person liable to pay any tax neglects or refuses to pay the same after demand "the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person," and further provided, 26 U.S.C.A. Int.Rev.Code § 3671, "* * * The lien shall arise at the time the assessment was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C.A. Int.Rev.Code § 3671. The statutes covering the collection of taxes are broad and comprehensive and the lien for taxes attaches to all of the property in the possession of the taxpayer to the extent of his interests and his rights thereto. Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311. Property is a word of very broad meaning

and when used without qualification may reasonably be construed to include obligations, rights and other intangibles as well as physical things. Fidelity & Deposit Co. of Maryland v. Arenz, 290 U.S. 66, 54 S. Ct. 16, 78 L.Ed. 176. Property within the tax laws should not be given a narrow or technical meaning. Commissioner of Internal Revenue v. Stephens-Adamson Mfg. Co., 7 Cir., 51 F.2d 681. Where a right is subject to ownership or transfer and may be brought within the dominion and control of the court through some recognized process, it is property. Citizens' State Bank of Barstow, Tex., v. Vidal, 10 Cir., 114 F.2d 380, 383. The fact that two or more persons may jointly own property will not prevent the lien from attaching to the taxpayer's share. Cannon v. Nicholas, 10 Cir., 80 F.2d 934. Moneys derived from the liquidation of assets held by a receiver or shareholders' agent after the payment of all of the obligations of an insolvent national bank may be recovered in an action at law by the contributing shareholder against the receiver who refuses to repay it. McCarty v. Gault, D.C., 24 F.Supp. 977, 980.

█ The Intervenor urges that the tax lien only covered such property as the taxpayer owned and possessed at the time of the filing of the assessment list and the demand. It urges that all of the assets belonging to the bank were, on that date, in the hands of the United States Government acting through the Comptroller of the Currency and his duly designated receiver. 12 U.S.C.A. § 192. However, the moneys which are the subject of this controversy do not stem alone from the assets of the bank but also from the accretions thereto acquired by assessments for the purpose of furthering the liquidation of the assets of the insolvent bank and the persons contributing to this result are entitled to special treatment over and above that to which their ownership of shares in the association entitles them 12 U.S.C.A. § 197. In McCarty v. Gault, supra, Judge Fee graphically describes this distinction: "The shareholders, who notwithstanding the compulsion of law, contributed nothing to the fund, are entitled to little consideration. The stock held by each of them became a liability instead of an asset upon the incidence of insolvency. The statute indicates a purpose to give to these stockholders a share in the final residue only. The stockholder who has paid the assessment in full, * * * is given a peculiar position. He is entitled to enforce a liability of the bank to him upon the same footing as other claimants. This privilege is not extended to a shareholder who has not paid the assessment." In that case, it was held that a shareholder was entitled to receive interest on the amount of the assessment from the date of payment by him. Clearly, such a right constitutes property and, although in February, 1934, it was unliquidated and the amount undetermined, it was then a property right belonging to Rosebush to which the lien would then attach. Re Rosenberg's Estate, 269 N.Y. 247, 199 N.E. 206, 105 A.L.R. 1238, certiorari denied, Rosenberg v. U. S., 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392; United States v. Canfield, D.C., 29 F.Supp. 734.

There was no essential change in the character of the assets from which this money was derived as between February, 1934, and July, 1937. Its possession had been transferred from the Comptroller's receiver to the shareholders' agent. At both times, it consisted of notes and mortgages and stocks and bonds which were being liquidated and reduced to cash. The Intervenor, asserting as it does that Rosebush had an interest in those assets which he could pledge in July, 1937, can hardly be heard to say that he did not have an interest in those assets which could be subjected to a lien in 1934. It is true that Intervenor defends its assignment on the basis of two Washington cases (Straus v. Wilsonian Investment Co., 177 Wash. 167, 31 P.2d 516; Reconstruction Finance Corporation v. Hambright, 133 P.2d 278) in which the validity of after acquired property clauses in chattel mortgages is upheld. But the agreement of July 27, 1937, contains no such language.

There is nothing in the case of United States v. Long Island Drug Co., Inc., 2 Cir., 115 F.2d 983, 986, on which Intervenor relies, which runs counter to this conclusion. In that case, the moneys attempted to be subjected to the lien were wages earned by the taxpayer after the filing of the assessment list and the demand for payment and after the levy upon the defendant. In that case, the court definitely recognized the rule laid down in Re Rosenberg's Estate, supra, and in United States v. Canfield, supra. It used this language: "They [future earnings] are contingent upon performance of a contract of service and represent no existing rights of property.

They are quite distinguishable from the right of a cestui que trust whose equitable life estate may be subjected to a lien on behalf of the government for unpaid taxes." In the Long Island Drug case the court specifically rejected its previous ruling in United States v. Western Union Telegraph Co., 2 Cir., 50 F.2d 102, to the effect that the lien is limited to tangible property as "dictum based on a too narrow reading of the statute." Furthermore, I would respectfully point out that, in making the statement "rights which do not exist at the time of the demand upon the taxpayer are not subjected to any lien," the Second Circuit relied on United States v. Pacific Railroad, C.C., 1 Fed. 97, which was decided when the statute provided "the amount shall be a lien in favor of the United States from the time it was due until paid", Act of July 13, 1866, 14 Stat. 98. In 1934, the statute provided: "The lien * * * shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C.A. Int. Rev.Code § 3671, 45 Stat. 875, Revenue Act of 1928. On this point, see Graves v. Commissioner, 12 B.T.A. 124, General Counsel Memorandum, C.B. VII-2, p. 94; Minnesota Mutual Life Insurance Co. v. United States, D.C., 47 F.2d 942; United States v. Taft, D.C., 44 F.Supp. 564.

Intervenor further urges the pertinency in this case of Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162, Graves v. Elliott, 307 U.S. 383, 59 S.Ct. 913, 83 L.Ed. 1356, State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436. Had the protection of the Statute 26 U.S.C.A. Int.Rev.Code, 3672, been extended to pledgees prior to the execution of the agreement of July 27, 1937, these cases might have been valuable to the consideration of this case. Even so, they would not have been decisive in Intervenor's favor. This for the reason that, while they extended the right of taxation to a state other than the domicile of the owner of intangibles, they did not attempt to prevent the state in which the owner was domiciled from exercising its power of taxation. As Mr. Justice Jackson, in his vigorous dissent in State Tax Commissioner v. Aldrich, 316 U.S. 174, 191, 62 S.Ct. 1008,

1016, 86 L.Ed. 1358, 139 A.L.R. 1436, put it: "The right of a state to tax succession to corporate stock by death of one domiciled therein, while not abrogated, is now subjected to an interfering and overlapping right of the state which chartered the corporation to tax the same stock transfer * * *." It is true that, in each of these cases, the question of situs of intangibles is considered. In none of them does the Supreme Court hold that that situs is limited for purposes of state taxation to the domicile of the corporation issuing the intangibles or of the trustee who may have legal title to them. The reach of the ruling so far as it interests us here is described by the present Chief Justice in Curry v. McCanless, 307 U.S. 357, 372, 59 S.Ct. 900, 908, 83 L.Ed. 1339, 123 A.L.R. 162: "If it be thought that it is identity of the intangibles with the person of the owner at the place of his domicile which gives power over them and hence 'jurisdiction to tax', and this is the reason underlying the maxim mobilia sequuntur personam, it is certain here that the intangibles for some purposes are identified with the trustee, their legal owner, at the place of its domicile and that in another and different relationship and for a different purpose—the exercise of the power of disposition at death, which is the equivalent of ownership—they are identified with the place of domicile of the testatrix, Tennessee. In effecting her purposes, the testatrix brought some of the legal interests which she created within the control of one state by selecting a trustee there and others within the control of the other state by making her domicile there. She necessarily invoked the aid of the law of both states, and her legatees, before they can secure and enjoy the benefits of succession, must invoke the law of both." I see nothing in these cases which supports Intervenor's position.

Since it is apparent that the United States had a lien on this property on July 27, 1937, then that provision of the Intervenor's contract which makes its assignment subsequent and junior to such lien, makes necessary the ruling that the funds here involved should be awarded to the United States less the sum of Two Hundred Dollars ($200) reasonable attorney's fees for Robbins.