[No. 54412–3.   En Banc.   July 15, 1988.]

MIKE DONOVICK, *Petitioner,* v. SEATTLE–FIRST NATIONAL BANK, *Respondent.*

*McGavick, Graves, Beale & McNerthney,* by *Malcolm C. Lindquist* and *James W. Feltus,* for petitioner.

*Ingram, Zelasko & Goodwin,* by *Arthur A. Blauvelt III,* for respondent.

BRACHTENBACH, J.—The issue is whether two separate deeds of trust on separate properties, securing one obligation, may be nonjudicially foreclosed in separate sales, one sale immediately following the other? The trial court held the foreclosures were valid; the Court of Appeals affirmed in an unpublished opinion. *Donovick v. Seattle–First Nat'l Bank,* noted at 48 Wn. App. 1008 (1987). We affirm.

This case arises out of an approximate $205,000 loan from defendant bank to plaintiff debtors. The debt was evidenced by a single promissory note. Debtors contemporaneously executed two deeds of trust, one on commercial property and one on a residence.

Approximately 15 months after default by the debtors, bank began separate but simultaneous nonjudicial foreclosure proceedings against both properties. Debtors failed to cure the default. The trustee first sold the residential property and immediately thereafter sold the commercial property. Bank bid one–half of the debt on each property. Debtor husband and his attorney were present at the sale.

Debtor recorded the proceedings. Neither debtor husband nor his attorney objected to either sale. No challenge is made to statutory procedures leading to the two sales.

After debtors were ordered to vacate the commercial premises by writ of restitution, they demanded that the trustee reconvey the commercial property to them, contending that its sale was unauthorized because the sale of the residential property extinguished the entire debt. Debtors then sued bank to quiet title to the commercial property; bank counterclaimed seeking confirmation of its title. The trial court granted a partial summary judgment for bank, quieting title and issuing a writ of restitution.

The essence of debtors' argument is that nonjudicial foreclosure of a deed of trust satisfies the underlying debt, precluding a creditor from foreclosing on another deed of trust that secures the same obligation. Debtors conclude that allowing foreclosure of the second deed of trust here is equivalent to granting a deficiency judgment prohibited by RCW 61.24.100.

Debtors argue for a literal reading of the language of RCW 61.24.100, which provides that a nonjudicial foreclosure "shall satisfy the obligation secured by the deed of trust foreclosed". A statute, however, must be read in its entirety, not piecemeal. *State v. Parker,* 97 Wn.2d 737, 741, 649 P.2d 637 (1982). Considering the statute as a whole we find debtors' arguments unpersuasive.

Initially, we note that the deed of trust act does not mandate or even contemplate that the entirety of the security must be sold in gross as a single parcel. Had the properties involved here been described in a single deed of trust, RCW 61.24.040(4) would have authorized the trustee to conduct the sales exactly as they took place. The trustee could have sold the properties "in gross or in parcels as the trustee shall deem most advantageous". *See* RCW 61.24-.040(4).

The question then is whether the statute mandates a different result here because the debt was secured by two deeds of trust instead of one.

██ Reading the entirety of RCW 61.24 in the context of the mortgage laws and the history of deed of trust legislation, it is apparent that there was contemplated a quid pro quo between lenders and borrowers. The borrower, for example, relinquished his right of redemption. *See* RCW 61.24.050 ("After sale, as in this chapter provided, no person shall have any right by statute or otherwise to redeem from the deed of trust or from the sale.") The secured party, on the other hand, gave up any right to a deficiency judgment. *See* RCW 61.24.100. By giving up the right to a deficiency judgment, however, the secured party did not also give up the right to realize upon the security given.

A literal reading of RCW 61.24.100 here as urged by debtors would ignore the intent of the statutory scheme and give an unjustified, unwarranted windfall to the debtor—a windfall completely without merit in logic or equity in principle. The statute does not prohibit the use of separate deeds of trust to secure a single obligation. Moreover, RCW 61.24.100 does not preclude creditor bank from realizing upon and exhausting the security given by debtors under the circumstances of this case.

The inequity of debtors' position here is illustrated by the record. We note that the satisfaction of the obligation by foreclosure is without regard to the sale price or fair value. *See* RCW 61.24.100. At the time of the sales at issue, debtors had a remaining unpaid indebtedness of $89,796.56 owed to bank. This debt was originally secured by the two deeds of trust at issue. Debtors now contend that bank is limited to foreclosure only on the parcel first sold—the residence.

The record shows at most a *gross* equity of approximately $64,000 in the residence, which had been listed for sale, but for which debtors had received no offers to purchase. The other property, the commercial property, was subject to prior security interests and taxes totaling $110,811. After securing a writ of restitution bank expended an additional $18,047 for maintenance. This property had been listed for sale for $150,000, but with no

offers received. Neither property represented full realization of the unpaid debt. Even together the sales of the two parcels amounted to less than full recovery for bank.

These calculations, of course, are based upon paper valuations. The marketplace may yield different results. Our analysis demonstrates only that bank accrued no advantage by the use of two deeds of trust. Likewise, no evidence suggests that the net result from debtors' standpoint would have been different had one deed of trust described both parcels, or had the two properties been sold in gross or separately. Bank's use of two deeds of trust did not deprive debtors of their statutory rights to cure the defaults, or to reinstate. The property sold was no more than debtors had given as security 4 years before sale. Debtors' obligation has now been satisfied and they are not subject to any deficiency, even if bank sustained an actual loss in foreclosing nonjudicially upon the properties.

Debtors also argue that the result here will frustrate the policy objectives of the act as enunciated in *Cox v. Helenius,* 103 Wn.2d 383, 387–88, 693 P.2d 683 (1985). We disagree. The first point in *Cox* is that nonjudicial foreclosures should remain efficient and inexpensive. Debtors merely speculate that successive foreclosures over a long period of time would decrease efficiency and increase costs. We find no evidence of this alleged result. Next, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Specific statutory remedies exist to make appropriate challenges. *See* RCW 61.24.130. Debtors here make no claim of improper procedures in the foreclosure process. Finally, the process should promote the stability of land titles. Property used to secure a debt is subject to foreclosure. No instability beyond that created by a voluntary encumbrance results.

We emphasize that the trustee here held the two sales at the same time, one immediately following the other. This is the same result which could have occurred under RCW 61.24.040(4) if the two parcels had been described in one instrument. Debtors have demonstrated no harm, nor do

we perceive any, from the method of foreclosure here employed. It might be that different procedures, such as delaying sale of the second parcel to the lender's unfair advantage or to the debtor's substantial detriment, or otherwise circumventing the purposes of the act could lead to a conclusion contrary to that we reach here. Those circumstances, however, are not before us. Thus, we tailor our holding closely to the facts of this case.

██ Finally, counsel for bank seeks attorney fees. The Court of Appeals granted bank's request for its attorney fees; petitioners raised no issue in their petition for review about the correctness of that award. Before this court, counsel did not comply with RAP 18.1(c) because he failed to file his affidavit 7 days prior to oral argument. Opposing counsel for debtor, however, does not challenge the requested amount, $1,672, nor does he challenge the request to waive strict compliance in light of extenuating circumstances set forth in the affidavit.

Generally, strict compliance with RAP 18.1(c) is required. Under these circumstances, however, the purpose of the rule has been satisfied; requested fees are granted. *Marketing Unlimited, Inc. v. Jefferson Chem. Co.*, 90 Wn.2d 410, 414, 583 P.2d 630 (1978).

Affirmed.

PEARSON, C.J., DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.

DORE, J. (dissenting)—I dissent.

The Bank made a mistake in drafting the documents for this loan which put it in a dilemma: holding two deeds of trust, neither of which fully secured its loan, it was limited to judicial foreclosure or was left undersecured if it were to attempt two nonjudicial foreclosures. Although it could have employed the more cumbersome method of judicial foreclosure, the Bank chose to run the risk of losing part of its security by attempting a nonjudicial foreclosure. I see no reason to rescue the Bank from its own folly when to do so

violates the letter and spirit of the "Deeds of Trust Act" (hereinafter the Act), RCW 61.24, and opens the door to abuses of that statute by lenders.

JUDICIAL FORECLOSURE

The Legislature has provided two methods of foreclosure for deeds of trust: judicial foreclosure under RCW 61.12 and nonjudicial foreclosure under RCW 61.24. There are substantial differences in the respective rights of lenders and borrowers under each, which arise from the particular history of each statute.

This State's procedures for judicial foreclosure date to 1899. Laws of 1899, ch. 53, §§ 7–15, p. 89. While the text refers to the foreclosure of mortgages, the procedure has been employed in connection with deeds of trust since at least 1934. *See Straus v. Wilsonian Inv. Co.,* 177 Wash. 167, 31 P.2d 516 (1934). Judicial foreclosure requires a petition by the mortgagee and the issuance of a judgment of foreclosure by the court. The order may provide for an upset price, that is, a minimum price at which the property can be sold which ensures an adequate return to the borrower. RCW 61.12.060. Property sold pursuant to judicial foreclosure ordinarily may be redeemed by the borrower within 1 year. RCW 6.23.020. Since sale under a decree of foreclosure is a forced sale, the state constitution requires that a certain portion of the value of residential property be preserved to the borrower as homestead. Const. art. 19, § 1. Thus, judicial foreclosure provides for a significant level of protection for mortgagors and grantors of deeds of trust: the right to an upset price, the right to redeem and the right to homestead.

However, these consumer protections place certain burdens on the lender. Judicial foreclosure is time consuming and requires extensive legal work and delays possession of the property by at least 12 months or more. Furthermore, the deed to the purchaser at the judicial sale conveys only an inchoate interest, since the borrower's right of redemption hangs over the sale for 1 year. *In re Fourth Ave.*

*South, Seattle,* 18 Wn.2d 167, 138 P.2d 667 (1943). These burdens led the lending industry to seek an alternative means of foreclosure, which the Legislature provided in 1965.

### NONJUDICIAL FORECLOSURE

Nonjudicial foreclosure under the Act, RCW 61.24, is a quick and inexpensive alternative to judicial foreclosure. The Legislature adopted the Act in 1965 because it was concerned that the cumbersome judicial foreclosure procedures were inhibiting residential financing in the state.

> Faced with a choice between lending in a state with archaic property security laws such as Washington and a state with modern laws permitting ready realization, investors would naturally choose the latter. It is not surprising that California, with modern realization procedures, was securing four times as much real estate financing proportionately as Washington in periods of "tight money." Based on an unpublished study by William Branigan of the Seattle Bar.

Gose, *The Trust Deed Act in Washington,* 41 Wash. L. Rev. 94, 95 n.7 (1966). *See* Comment, *Statutory Redemption: The Enemy of Home Financing,* 28 Wash. L. Rev. 39 (1953).

Streamlining Washington's property security laws necessitated a reduction in the level of protection afforded to borrowers. The Act does provide a system of notice to ensure the borrower the opportunity to preserve his rights, but the Act expressly precludes redemption. RCW 61.24-.050. There is no provision for setting an upset price, since there is no judicial involvement in the sale. Finally, a private sale under the Act is not a forced sale, so there is no right of homestead. We explicitly recognized this in *Felton v. Citizens Fed. Sav. & Loan Ass'n,* 101 Wn.2d 416, 679 P.2d 928 (1984), though it was implicit in the Act when adopted.

The rights to redemption, upset price and homestead were surrendered in exchange for an important concession from lenders. The Act expressly forbids a deficiency decree.

Foreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of the sale price or fair value, and no deficiency decree or other judgment shall thereafter be obtained on such obligation.

RCW 61.24.100.[1]

This quid pro quo was clearly understood by the Legislature, bar and lending industry at the time. As one contemporary commentator expressed it:

There is, however, one sacrifice which the lender must make in utilizing the private sale provision of the act—he waives the right to a deficiency judgment.

Gose, at 96. This commentator went on to argue that the prohibition on deficiency judgments had no justification *except* as a quid pro quo for the public's surrender of consumer protections.

The rationale of denying a deficiency judgment to the lender upon his election to foreclose under the act's private sale provisions is subject to criticism. In Lessard v. Smith, 45 Wn. 2d 473, 275 P.2d 730 (1954), the Washington court denied the deficiency judgment right to a mortgagee who elected to use the notice and sale provision of the chattel mortgage statute, WASH. REV. CODE ch. 61.08 (1961). The *Lessard* court was moved by policy considerations—such a sale "could bind the debtor to the results of a collusive sale, or to one too speedily made, or to one completed under the shadow of distress." 45 Wn. 2d at 476, 275 P.2d at 732. However, these policy considerations do not seem applicable to the trustee's sale because of the strict statutory control over the sale. Thus, the legislature has perpetuated a distinction which should not be relevant. *Apparently it was felt that the waiver of the right to a deficiency judgment is part of*

---

[1] If, in a situation such as this one, the lender finds it necessary to obtain a deficiency judgment following foreclosure, the Act specifically reserves that right, but requires the lender to submit to the burdens of judicial foreclosure.

Where foreclosure is not made under this chapter, the beneficiary shall not be precluded from enforcing the security as a mortgage nor from enforcing the obligation by any means provided by law.

RCW 61.24.100. *See also* RCW 61.24.120.

*the "price" the lender must pay to elect to use the private sale provisions.*

(Italics mine.) Gose, at 96 n.14.

The majority now abrogates this compromise. I cannot join in such an unjust result.

### THE MAJORITY VIOLATES THE LOGIC OF THE ACT AND UNJUSTLY OVERTURNS THE LEGISLATIVE COMPROMISE

First, the majority's reading of RCW 61.24.100 violates the logic of the Act. Contrary to the commentary by Gose quoted above, there is a substantive reason, beyond the legislative compromise, for the antideficiency rule.

As noted, one of the consumer protections embodied in the judicial foreclosure statute is the right to an upset price; that is, a minimum bid set by the court which ensures a fair return to the borrower. The Act, in contrast, authorizes private sale, so there is no opportunity for a borrower to request an upset price. The antideficiency rule of RCW 61.24.100 takes its place. Since the obligation is extinguished by the sale, the amount of the obligation necessarily becomes the minimum bid at the sale. An adequate return to the borrower is guaranteed by statute, where in a judicial foreclosure it could be granted in the court's discretion.

The majority's ruling destroys this "upset price" function of the antideficiency rule by permitting the lender to bid less than the full amount of the obligation at the private sale. This violates the borrower's right to an adequate return on the property sold; not only the extinguishment of the debt, but any excess a third party might bid beyond the lender's lien. The majority's removing the obligation as the minimum bid in any particular sale will result in a lower return on that sale than would otherwise have been obtained. The bidding will start at a lower level and will be less vigorous because the lender has the opportunity to

recover the obligation out of a second or third deed of trust. While the majority is content to rely on appraisals that indicate this property was worth less than the obligation, anyone with any experience in this area knows that appraisals are necessarily rough approximations. Only actual, vigorous bidding can determine the true value of the security and ensure that the borrower receives his due. The majority's rule eliminates this function of the antideficiency statute, violates the logic of the Act and opens new possibilities for lenders to profit at the expense of borrowers.

The second reason I cannot join in the majority opinion is that it gives this lender what it could not obtain in the Legislature 23 years ago. The Bank is given all the benefits of both judicial and nonjudicial foreclosure: *the right to a deficiency judgment* and freedom from redemption, upset price and homestead. The borrower property owner is given all the burdens of both types of foreclosure: he is subject to deficiency but has no rights of redemption, upset price or homestead. The history of the Act clearly shows that this arrangement was rejected by the Legislature. Those burdens and benefits were carefully, and democratically, apportioned between lenders and borrowers in the compromise of 1965. Now, for the sake of saving a bank from its mistake, the majority abrogates that compromise. Such conduct is tragic for the property owner.

## CONCLUSION

The rule of this case will do more than save this bank from its own mistake (if that was any justification). The rule of the majority is a substantial change in the law which opens the door to new possibilities in real estate financing which have not been carefully considered and which will benefit lenders at the expense of borrowers. The court should let the Legislature make this gigantic change and not engage in judicial legislation. It is unwise, unjust and wrong.

424

I would reverse.

GOODLOE, J., concurs with DORE, J.

Reconsideration denied October 26, 1988.