[No. 29676-1-I.   Division One.   May 17, 1993.]

CASCADE MANOR ASSOCIATES, *Respondent,* v. WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S., *Appellant.*

*Roger W. Jones, Jr.,* and *Ordal & Jones; Malcolm L. Edwards* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellant.

*James P. Murphy* and *Schwabe, Williamson & Wyatt,* for respondent.

AGID, J. — Witherspoon, Kelley, Davenport & Toole, P.S. (Witherspoon) appeals the trial court's judgment for Cascade Manor Associates (Cascade) in the amount of $35,684.61 plus prejudgment interest of $5,150.32. Witherspoon argues that Cascade was barred by collateral estoppel from attacking prior orders of Franklin County Superior Court and an opinion of the Court of Appeals, Division Three, affirming those orders. Witherspoon also argues that the trial court

erred by concluding on summary judgment that the trustee's sale satisfied Cascade's obligation to pay U.S. Bancorp (Bancorp) back rents, costs, and attorney fees from the previous Franklin County litigation and that an attorney at Witherspoon, acting as trustee, breached his fiduciary duties to Cascade. Finally, Witherspoon contends that the trial court erred by awarding Cascade $36,000 in attorney fees and costs. We reverse and grant Witherspoon's cross motion for summary judgment.

In 1984, Cascade purchased an 80-unit apartment building in Pasco, Washington. To make the purchase, Cascade executed a deed of trust and a promissory note in the amount of $800,000. Bancorp ultimately became the beneficiary of the deed of trust. Alliance Management, Inc. (Alliance) managed the property for Cascade and collected rent and security deposits from the tenants. Michael Currin, an attorney with Witherspoon, acted as trustee through November 3, 1989. He also acted as counsel for Bancorp as early as July 1988.

According to the note and deed of trust, if foreclosure occurred, Bancorp, as beneficiary, would "look solely to the property securing [the] note for satisfaction of [the] note or any other sums due under the Loan Documents" and would "not be entitled to a deficiency judgment."[1] In addition to the

---

[1]The pertinent paragraph of the promissory note reads:

"Notwithstanding any other provision of this note or any documents securing this note (the "Loan Documents"), the undersigned shall have no personal liability for payment of this note or any other sums due under the Loan Documents or for failure to perform or observe any of the terms or conditions of the Loan Documents. In the event of a foreclosure under the Loan Documents, Beneficiary *shall look solely to the property securing this note for satisfaction of this note or any other sums due under the Loan Documents*, and Beneficiary shall not be entitled to a deficiency judgment." (Italics ours.)

Similarly, a provision in the deed of trust provides as follows:

"Notwithstanding any other provision of the Loan Documents, Grantor shall have no personal liability for payment of the Note or any other sums due under the Loan Documents or for failure to perform or observe any of the terms or conditions of the Loan Documents. In the event of a foreclosure of this deed of trust, *Beneficiary shall look solely to the Collateral for satisfaction of the Note or any other sums due under the Loan Documents*, and Beneficiary shall not be entitled to a deficiency judgment." (Italics ours.)

apartment complex itself, the property securing the note included all of Cascade's "right, title, interest, claim and demand, now owned or hereafter acquired" to all "rents, issues and profits" of the apartment building.[2]

In April 1988, Cascade defaulted on its loan obligation. On August 2, Currin, acting as trustee, issued a notice of a trustee's sale to be held January 6, 1989. (Currin later abandoned that sale, as discussed in footnote 3, *infra*.) After issuing the notice, Currin, acting as Bancorp's attorney, filed a motion in Franklin County Superior Court seeking appointment of a receiver to collect rents and operate the apartment building. On September 12, 1988, the Superior Court entered a preliminary injunction and order appointing a receiver, stating in part that:

> 4. Defendant Cascade Manor Associates, and its agents and employees, are hereby restrained from managing the apartment complex, obtaining, holding, transferring, encumbering or secreting any portion of the rents, revenues, tenants['] security or other departments of the Cascade Manor Apartment Complex.
> 5. Defendant Alliance Management, Inc. . . . is hereby required to turnover [*sic*] to . . . [the] receiver, all rents and revenues of every kind and from whatever source obtained, arising out of or in connection with the Cascade Manor Apartments [*sic*] Complex, now or hereafter in its possession.

The order further stated in capital letters that violation of its restraining provisions would subject the violators to civil contempt proceedings.

Cascade and Alliance turned over the management of the apartment complex and the security deposits to the receiver but refused to give up the back rents totaling $16,684.61.

---

[2]The granting clause in the deed of trust states:

"Grantor hereby irrevocably grants, bargains, sells and conveys to Trustee in trust, with power of sale, all Grantor's estate, right, title, interest, claim and demand, now owned or hereafter acquired, in and to the following:

" . . . .

"(e) All rents, issues and profits of the Property, . . . together with the immediate and continuing right to collect and receive all of the rents, . . . and other income of any nature now or hereafter due under the Leases . . .." The security agreement in the deed of trust expressly identified the property listed in the granting clause as "the 'Collateral' ".

After receiving the rents from Alliance, Cascade had deposited that money in various accounts because it believed that the collected rent lost its character as security and simply became "money in the bank." Cascade sought clarification of the September 12 order to that effect.

On April 13, 1989, the same Superior Court denied Cascade's motion for clarification, stating that the prior order was "clear and unambiguous" and required Cascade and its agents to turn over all rents to Bancorp and prohibited them from secreting the money. Further, the April 13 order expressly stated that the rents "did not lose their identity as 'rent and revenues', upon deposit into a property bank account maintained by Cascade . . . or Alliance". The trial court held Cascade and Alliance in contempt for violating the September 12 ruling and ordered them to pay Bancorp the back rents plus attorney fees. Because the trial court did not consider Cascade's motion for clarification frivolous, it awarded Bancorp only a portion of the $15,000 in fees it requested.

Cascade appealed to Division Three. In July 1989, while the appeal was pending, Currin gave notice of another trustee's sale scheduled for October 6, 1989.[3] Cascade's attorney, James McAteer, received that notice but did not attend the sale which was continued, pursuant to RCW 61.24.040(6), until November 3, 1989.[4] According to McAteer's affidavit,

> [w]hen the trustee of the deed of trust abandoned the January 1989 trustee's sale, I understood that this was done to avoid the application of RCW 61.24.100. I also believed that the trustee would abandon the October 1989 sale for the same reason. I did not become aware that the trustee rescheduled

---

[3] According to Currin's affidavit, he abandoned the January 1989 sale, after continuing it to May 5, 1989, because Cascade had filed a notice of appeal following entry of the Franklin County court's April 13, 1989, ruling. Currin believed that he and Bancorp should "judge the quality and persuasiveness of Cascade's appellate arguments before the foreclosure actually occurred."

[4] The parties do not dispute that the continuation of the sale to November 3 complied with RCW 61.24.040(6), which states that a trustee may continue a sale "by a public proclamation at the time and place fixed for sale in the notice of sale" or by alternative methods. Subsection (6) also expressly states that "[n]o other notice of the postponed sale need be given".

the October 1989 sale and sold the property in November 1989 until September 1990.

Bancorp purchased the apartment complex at the November 3 sale for a "credit bid" of $794,913.24. At that time, Cascade's total indebtedness under the deed of trust was $953,290.[5]

In an opinion filed January 9, 1990, Division Three affirmed the September 12, 1988, and the April 13, 1989, orders of the Franklin County Superior Court. However, unlike the Superior Court, the appellate court concluded that Cascade's motion for clarification *was* frivolous and that the trial court had erred by limiting Witherspoon's award of attorney fees. Hence the court instructed the trial court, on remand, to reconsider the fee award in light of its opinion. The Supreme Court denied Cascade's subsequent petition for review. Although the trustee's sale finally occurred on November 3, 1989, neither the Court of Appeals nor the Supreme Court was aware of that fact when they made their respective rulings.

Cascade paid Bancorp the back rent and $19,000 in attorney fees and costs (for a total of $35,684.61) with two checks dated July and August 1990. In September 1990, Cascade learned of the trustee's sale and subsequently filed a complaint against Witherspoon in King County Superior Court for breach of fiduciary duty, fraud, breach of contract, and restitution. The essence of the complaint was that, under RCW 61.24.100, the trustee's sale relieved Cascade of its obligation to pay Bancorp the back rents, and Currin breached his fiduciary duties by not informing Cascade that the sale had occurred. In its answer, Witherspoon denied Cascade's allegations. It also asserted that Currin had not breached his fiduciary duties as trustee and that Cascade's liability for the back rents and Bancorp's attorney fees from the Franklin County litigation was res judicata. Both parties filed motions for summary judgment.

In its August 1991 oral ruling, the trial court concluded that, under RCW 61.24.100, the trustee's sale satisfied all of

---

[5]Thus, contrary to Cascade's assertion, Bancorp's credit bid was *not* a "full credit bid" that would completely satisfy Cascade's obligation under the loan documents.

Cascade's obligations under the deed of trust, including its obligation to pay Bancorp the back rents and attorney fees as ordered by the Franklin County Superior Court. In addition, the court awarded Cascade its attorney fees and costs for the King County litigation on the basis of the attorney fee provisions in the parties' "agreements". The court ordered that the amount of the fee award would be determined at a subsequent hearing.

Witherspoon filed a motion for reconsideration of the oral ruling, arguing in part that Cascade was not entitled to an award of attorney fees because there was no basis for it. The trial court denied that motion and, in so doing, stated that Witherspoon's "arguments submitted on reconsideration on the issue of plaintiff's entitlement to attorney's fees are untimely and are hereby stricken".

At a hearing on October 14, 1991, the trial court received Cascade's fee affidavit. Counsel for Witherspoon believed the hearing date was October 16 and, therefore, was not present when the fee issue was decided. The trial court's written order signed at the hearing reads in part as follows:

> The court hereby concludes that as a result of the trustee's sale of November 3, 1989, the obligation of Cascade Manor Associates under the deed of trust was satisfied as a matter of law pursuant to RCW 61.24.100. The court further concludes that the orders entered by the Franklin County Superior Court requiring Cascade to turn over back rents and attorney's fees constituted part of the obligation secured by the deed of trust which was satisfied as a result of the trustee's sale.

The order consequently denied Witherspoon's motion for summary judgment and granted Cascade's motion for summary judgment as to the causes of action against Witherspoon for breach of fiduciary duty and breach of contract.[6]

On October 29, 1991, Witherspoon filed a motion for revision regarding the award of attorney fees and a declaration explaining his absence at the October 14 hearing. The trial court entered final judgment on November 8, 1991, awarding Cascade damages of $35,684.61 plus interest and $36,000 in

---

[6]The trial court dismissed with prejudice Cascade's claim of common law fraud.

attorney fees and costs, for a total of $76,834.93. Witherspoon appeals that judgment.

## I

■ We first consider whether the trial court erred by concluding that the trustee's sale satisfied Cascade's obligation to pay Bancorp the back rents and attorney fees under former RCW 61.24.100.[7] We hold that, as a matter of law, that statute did not preclude Bancorp from enforcing its judgment against Cascade.

As of November 3, 1989, the date of the trustee's sale, former RCW 61.24.100[8] read as follows:

---

[7]Although Witherspoon argues that Cascade is barred by collateral estoppel from attacking the Franklin County orders and the Division Three opinion requiring Cascade to pay Bancorp back rents and attorney fees, it never raised that issue during the proceedings below. Therefore, it may not raise it for the first time on appeal. RAP 9.12; *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 240, 588 P.2d 1308 (1978).

Regardless, the criteria for the defense of collateral estoppel have not been met. *See Girtz v. New Hampshire Ins. Co.*, 65 Wn. App. 419, 423, 828 P.2d 90 (1992). In particular, the issues decided by the Franklin County litigation did not include the issues Cascade raised in its King County litigation, namely, whether RCW 61.24.100 relieved it of its obligation to pay Bancorp the back rents once the trustee's sale occurred and whether Witherspoon, through Currin, breached its fiduciary duties as trustee by not revealing that the sale had occurred. Neither of those issues was litigated, nor *could* they have been litigated, in the Franklin County proceedings because the trustee's sale had not yet occurred when either the September 12, 1988, order or the April 13, 1989, order was entered. Likewise, the Court of Appeals, Division Three, never considered the effect that RCW 61.24.100 had upon Cascade's obligation to pay the back rents because that court was not informed of the sale.

[8]In June 1990, the Legislature amended the statute to read:
Foreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of the sale price or fair value, and no deficiency decree or other judgment shall thereafter be obtained on such obligation, except that if such obligation was not incurred primarily for personal, family, or household purposes, such foreclosure shall not preclude any judicial or nonjudicial foreclosure of any other deeds of trust, mortgages, security agreements, or other security interests or liens covering any real or personal property granted to secure such obligation. Where foreclosure is not made under this chapter, the beneficiary shall not be precluded from enforcing the security as a mortgage nor from enforcing the obligation by any means provided by law.
RCW 61.24.100. While Witherspoon contends that the amendment to former RCW 61.24.100 applies retroactively to the date of the trustee's sale in this case,

> Foreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of the sale price or fair value, and *no deficiency decree or other judgment shall thereafter be obtained* on such obligation. Where foreclosure is not made under this chapter, the beneficiary shall not be precluded from enforcing the security as a mortgage nor from enforcing the obligation by any means provided by law.

(Italics ours.) The Franklin County orders in this case were entered in September 1988 and April 1989, long before the November 1989 foreclosure sale occurred. Nothing in the statute prohibited a creditor from collecting on a judgment awarding additional collateral when the judgment is entered prior to the trustee's sale.

We find *Donovick v. Seattle-First Nat'l Bank*, 111 Wn.2d 413, 757 P.2d 1378 (1988) instructive on this issue. In that case, the Supreme Court considered whether two separate deeds of trust on separate properties, which secured one financial obligation, could be nonjudicially foreclosed in two separate trustee's sales pursuant to RCW 61.24. The debtors in that case argued that the initial trustee's sale satisfied the underlying debt and precluded the creditor from holding a second trustee's sale to foreclose on the second deed of trust that secured the same obligation. The debtors contended that the second trustee's sale was tantamount to granting the creditor a deficiency judgment contrary to RCW 61.24.100. *Donovick*, 111 Wn.2d at 415.

In concluding that the two sales were valid, the court reasoned that

> the deed of trust act does not mandate or even contemplate that the entirety of the security must be sold in gross as a single parcel. Had the properties involved here been described in a single deed of trust, RCW 61.24.040(4) would have authorized the trustee to conduct the sales exactly as they took place. The trustee could have sold the properties "in gross or in parcels as the trustee shall deem most advantageous". *See* RCW 61.24.040(4).

---

that argument was not raised before the trial court and, thus, cannot be raised now on appeal. RAP 9.12; *Seattle-First Nat'l Bank*, 91 Wn.2d at 240. Moreover, in its memorandum supporting its motion for summary judgment, Witherspoon conceded that the amendment did not apply to this case.

*Donovick*, 111 Wn.2d at 415. Thus, the secured party did not relinquish any right it had "to realize upon" and exhaust the security given by the debtors because it chose the nonjudicial method of foreclosure. 111 Wn.2d at 416.

Similarly, in the present case, Bancorp was entitled to collect the collateral that Cascade provided as security for its loan obligation, and nothing in the deed of trust or promissory note limited Bancorp's right to collect any of the collateral upon default. Former RCW 61.24.100 does not extinguish Cascade's obligation to pay that collateral. As the *Donovick* court noted, to read the statute otherwise would "ignore the intent of the statutory scheme and give an unjustified, unwarranted windfall to the debtor — a windfall completely without merit in logic or equity in principle." 111 Wn.2d at 416.

Cascade argues that *Trans West Co. v. Teuscher*, 27 Wn. App. 404, 618 P.2d 1023 (1980) forbids such an interpretation of RCW 61.24.100. However, that case did not involve RCW 61.24.100. The issue in *Trans West* was whether an assignee of unpaid judgments for interim installments that a borrower owed on a real estate contract could collect upon those judgments after the borrower forfeited its rights under the real estate contract and foreclosure procedures were completed. The court concluded that the assignee could not collect those judgments because the unpaid installments were part of the unpaid purchase price and the forfeiture relieved the borrower entirely from that obligation.

In contrast, the back rents that Cascade was obligated to pay Bancorp were not part of Cascade's debt under the promissory note but were instead part of the collateral securing that note. *Trans West* therefore has no application to the facts of this case. Thus, the trial court erred by concluding that former RCW 61.24.100 relieved Cascade of its obligation to pay Bancorp the back rents and attorney fees as ordered by the Franklin County Superior Court.

## II

The second issue raised is whether the provisions of the deed of trust and the promissory note precluded Bancorp from seeking personal liability against the Cascade partners. Cascade argues that, regardless of the effect of RCW 61.24-.100, its obligations under the deed of trust ended when the trustee's sale occurred because the express terms of the deed limited Bancorp's recourse to the collateral securing the note. Presumably, Cascade is referring to the granting clause (see footnote 2) and paragraph 52 in the deed, which reads:

> *Limitation on Liability.* Notwithstanding any other provision of the Loan Documents, Grantor shall have no personal liability for payment of the Note or any other sums due under the Loan Documents or for failure to perform or observe any of the terms or conditions of the Loan Documents. In the event of a foreclosure of this deed of trust, Beneficiary shall look solely to the Collateral for satisfaction of the Note or any other sums due under the Loan Documents, and Beneficiary shall not be entitled to a deficiency judgment.

Cascade's argument has no merit, however, because the deed only protects Cascade, as grantor, from personal liability "for payment of the [n]ote or any other sums due under the Loan Documents". We agree with the portion of the Division Three ruling that states:

> The contention by Alliance and Cascade that the partnership liability on the note and deed of trust was limited to the property and therefore a personal judgment cannot be entered against the partnership is rejected. We do not construe the order of contempt to constitute the entry of a personal judgment against the partnership within the meaning of the note and deed of trust. The order of contempt merely grants a specific enforcement of the September 12 order and the terms of the deed of trust by requiring delivery of the net rental proceeds to the receiver.

Thus, the Franklin County rulings requiring Cascade to pay the back rents did not order the satisfaction of the loan obligation. Rather, they enforced the terms of the deed of trust in which Cascade had pledged the rents as security for the promissory note. Likewise, the attorney fees Cascade

owed Bancorp were not "due under the Loan Documents" but, instead, were sanctions against Cascade for refusing to comply with the September 12 order. Consequently, the loan documents did not protect the Cascade partners from personal liability for either the back rents or the attorney fees it owed.

## III

Finally, we consider whether Witherspoon, through Currin, breached its fiduciary duties as a trustee. Cascade contends that Witherspoon breached its fiduciary duties because Currin did not inform Cascade of the trustee's sale and because he simultaneously acted as trustee and attorney for Bancorp, the beneficiary of the deed of trust.

■ Given our holding that the trustee's sale did not relieve Cascade of its obligation to pay Bancorp the back rents and attorney fees for the Franklin County litigation, the fact that Currin did not inform Cascade of the trustee's sale had no meaningful impact upon that obligation. At most, if Currin had told Cascade that the apartment complex had been sold, Cascade could have challenged the order requiring it to pay the rents before it paid them, arguing that RCW 61.24.100 relieved it of that obligation. As discussed previously, that argument would have failed because the statute did not have that effect. Further, Currin complied with all of the notice requirements of the trustee's sale pursuant to RCW 61.24, and Cascade makes no argument to the contrary. Cascade merely argues, without citation to any authority, that Currin had the additional duty of notifying it of the sale once it occurred.[9]

■ Likewise, there is no basis to conclude that Currin breached his fiduciary duties as trustee by acting as both the

---

[9]Cascade also contends that its attorney, James McAteer, relied upon Currin's previous "course of conduct" of abandoning the trustee's sale scheduled for January 1989, and assumed that Currin would also abandon the October 1989 sale. That argument is without merit. Currin gave McAteer the proper notice of the scheduled sale, and it was incumbent upon McAteer to either attend the scheduled sale or determine if the sale had been continued or abandoned. Nothing in the record supports Cascade's contention that Currin misled McAteer or encouraged him to believe that the sale scheduled in October would be abandoned.

trustee and Bancorp's attorney. Contrary to Cascade's assertion, *Cox v. Helenius*, 103 Wn.2d 383, 693 P.2d 683 (1985) does not prohibit a trustee from also acting as the attorney for the beneficiary. Instead, *Cox* noted that, although the attorney's dual role could have "precipitated" a breach of fiduciary duties if a conflict of interest arose, such a breach could be prevented if "the person serving as trustee and beneficiary . . . transferr[ed] one role to another person." 103 Wn.2d at 390. While a trustee acting as counsel for one of the involved parties could avoid any risk of conflict when litigation arises by arranging for a substitute trustee, neither *Cox* nor any other authority requires the trustee to do so. Indeed, *Cox* noted that a trustee is not required to ensure that the grantor is protecting his or her own interest. 103 Wn.2d at 389. Consequently, we hold that the trial court erred by concluding that Witherspoon, through Currin, breached its fiduciary duties to Cascade.

The judgment of the trial court is reversed, and Witherspoon's motion for summary judgment is granted.

COLEMAN and FORREST, JJ., concur.

After modification, further reconsideration denied June 23, 1993.

Review denied at 123 Wn.2d 1003 (1994).